EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. BALDOMERO FREYRE, JUEZ, demandado.

*Número:* C-64-23 *Resuelto:* 9 de octubre de 1964

PETICIÓN DE CERTIORARI para revisar RESOLUCIÓN de *Baldomero Freyre*, J. (San Juan) declarando con lugar una moción solicitando la supresión de evidencia ilegalmente ocupada. *Anulado el auto expedido.*

*J. B. Fernández Badillo, Procurador General, Rodolfo Cruz Contreras, Procurador General Interino, Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados del peticionario; *José Rafael Gelpí,* abogado del interventor.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

La residencia de Juan B. Pérez fue registrada en virtud de orden al efecto expedida por un magistrado. Se ocupó material usado para el juego declarado ilegal por la Ley Núm. 220 de 1948—33 L.P.R.A. sec. 1247 *et seq.*—así como dinero en efectivo. El fiscal radicó acusación por infracción a la referida ley. Antes del día señalado para la vista del caso el acusado solicitó se le devolviera el material y el dinero ocupado. Alegó que el registro había sido ilegal.

En la moción radicada se apuntan, entre otras, las siguientes razones para sostener la ilegalidad del registro:

". . . de la declaración jurada no surge causa probable para creer en la existencia de los fundamentos en que se basó la Orden de Allanamiento y Registro ya que de dicha declaración jurada, única presentada al Magistrado que expidió la Orden no surge una descripción del material a ser ocupado,

demostrativa de que era material poseído y manipulado en violación a la Ley 220 de 1948 porque en ningún sitio de la declaración jurada aparece violación de la referida ley y porque desde la fecha en que el funcionario alega haber visto manipular material del indicado, la cual fecha es el 19 de agosto de 1963 hasta la fecha en que se prestó la declaración jurada que lo es el 20 de octubre de 1963, ha transcurrido un lapso de tiempo irrazonable, siendo la fecha en que se observaron los hechos por el policía demasiado remota para poder determinar el Magistrado que expidió la Orden de Allanamiento el 20 de octubre de 1963 si la evidencia que se interesaba ocupar podía estar aún en el sitio a ser allanado y porque en la declaración jurada no se dice en forma alguna en qué sitio estaba el papel que contenía los números escritos a lápiz a que la misma se contrae."

El tribunal de instancia declaró con lugar la moción. Al resolverla expresó:

"El Tribunal declara con lugar la moción del acusado, en el sentido de que se decrete la ilegalidad del registro al amparo de la orden de allanamiento expedida en este caso, *por entender que fue completamente insuficiente la declaración jurada prestada por el Agente José Robles Robles, ya que en dicha declaración en ningún momento se hizo constar que viera operación ilegal alguna en la casa del acusado que justificara la expedición de la orden de allanamiento, para invadir la residencia del acusado.* Se decreta nulo el registro, advierte el tribunal que no admitirá en evidencia el resultado de dicho registro si hubo alguno." (Énfasis suplido.)

El Estado nos pidió revisar esta resolución. Accedimos.

Dispone nuestra Constitución en su Carta de Derechos, Sec. 10 que "sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello *únicamente cuando exista causa probable apoyada en juramento* o afirmación, describiendo particularmente el lugar a registrarse y las personas a detenerse o las cosas a ocuparse." (Énfasis suplido.)

La anterior disposición aparece luego de establecerse afirmativamente en la primera parte de la sección que "no

se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables."

■ Esta disposición consagra uno de los derechos más preciados del individuo, la inviolabilidad de su morada. Desde tiempos antiguos aparece reconocido en los ordenamientos españoles. Los Arts. 6to., 7mo. y 8vo.[1] del Pacto Político Civil entre el Reino y Don Alfonso IX, acordado en las Cortes de León de 1188, recogen lo dispuesto en el Fuero de León aprobado por las Cortes en 1020, garantizando la inviolabilidad del domicilio. Ver José Ramírez Santibañez, *Aventando Cenizas*, Estudio Comparativo entre el Ordenamiento de León de 1188 y la Gran Carta Inglesa de 1215, págs. 61–65 y 106 (San Juan 1922). La Enmienda Cuarta a la Constitución de los Estados Unidos de América[2] lo consagra como derecho fundamental de todo ciudadano americano. Ver Fraenkel, *Concerning Searches & Seizures*, 34 Harv. L. Rev. 361 (1921). En *Ker* v. *California*, 374 U.S. 23, 32 (1963) se expresó el Tribunal Supremo de los Estados Unidos así:

"Implícito en la garantía que ofrece la cuarta enmienda contra registros e incautaciones irrazonables, está el reconocimiento de la libertad individual. Esta salvaguarda se ha denominado como 'de la esencia de la libertad constitucional' cuya

---

[1] Disponen así dichos preceptos:
"Art. 6°—He jurado que ni Yo ni nadie pueda entrar por fuerza en casa de otro.
"Art. 7°—El que tratando de allanar la casa ajena matase al dueño o a la dueña de ella, incurrirá en la pena de alevosía y traición.
"Art. 8°—Si el dueño, la dueña o alguno de los que ayudase a defender la casa, matasen a alguno de los agresores, no incurrirán en pena alguna por homicidio, y nunca se les podrá obligar a responder por el daño que hiciesen."

[2] Dispone así la Cuarta Enmienda:
"No se violará el derecho del pueblo a la seguridad de sus personas, hogares, documentos y pertenencias, contra registros y allanamientos irrazonables, y no se expedirá ningún mandamiento, sino a virtud de causa probable, apoyada por juramento o promesa, y que describa en detalle el lugar que ha de ser allanado, y las personas o cosas que han de ser detenidas o incautadas."

garantía 'es tan importante e imperativa como las garantías de otros derechos fundamentales del individuo . . .' *Gouled* v. *United States*, 255 U.S. 298, 304 (1921); cf. *Powell* v. *Alabama*, 287 U.S. 45, 65–68 (1932). Aunque el lenguaje de la enmienda es 'general' ésta 'prohibe todo registro que sea irrazonable; protege a todos, al sospechoso o conocido ofensor, como también al inocente, y sin lugar a dudas se extiende al lugar que fuera objeto del registro. . . .' *Go-Bart Importing Co.* v. *United States*, 282 U.S. 344, 357 (1931). Allí enunció el Juez Butler, como portavoz del tribunal que 'la enmienda deberá ser objeto de interpretación liberal y a todos concierne el deber de vigilar para su más eficaz ejecución evitándose así que surja un deterioro en aquellas libertades para cuya protección fue adoptada.' Ibid. También reconoció que 'no hay fórmula para precisar razonabilidad. Cada caso deberá ser decidido considerando sus hechos y circunstancias.' Ibid.; ver *United States* v. *Rabinowitz*, 339 U.S. 56, 63 (1950); *Ríos* v. *United States*, 364 U.S. 253, 255 (1960)."

 Puntualizan pues nuestra disposición constitucional y la Cuarta Enmienda que únicamente se expedirán mandamientos autorizando registros cuando exista causa probable. "Al determinar que es causa probable no estamos llamados a establecer si la ofensa que se imputa fue verdaderamente cometida. Nos concierne sólo la cuestión de si el deponente tuvo base razonable, al momento de prestar su declaración jurada y haberse librado la orden de registro, para creer que se estaba violando la ley en el lugar a ser allanado; y si los hechos aparentes que se desprenden de la declaración jurada son de tal naturaleza que una persona prudente y razonable pudiera creer que se ha cometido la ofensa imputada, hay la causa probable que justifica la expedición de una orden." *Dumbra* v. *United States*, 268 U.S. 435, 441 (1925); *United States* v. *Moriarity*, 327 F.2d 345, 348 (3d Cir. 1964); *People* v. *Fino*, 199 N.E.2d 151 (N.Y. 1964).

 Apuntamos en *Pueblo* v. *Rivera*, 79 D.P.R. 742, 747 (1956) citando de *Brinegar* v. *United States*, 338 U.S. 160, 175 (1949) que "cuando nos referimos a causa probable. . .

actuamos a base de probabilidades. Estas no son cuestiones técnicas; se trata de consideraciones prácticas y reales que surgen en la vida cotidiana a base de las cuales actúan hombres prudentes y razonables y no técnicos en derecho. La norma o regla en cuanto a la prueba, por consiguiente, depende de la cuestión que debe probarse."

■ Tan recientemente como en marzo de 1964, en *Rugendorf* v. *United States*, 376 U.S. 528, 11 L.Ed. 887, 891 (1964), el Tribunal Supremo de los Estados Unidos ha vuelto a señalar que es suficiente la orden de allanamiento si de la deposición surge base suficiente para establecer la probabilidad de que el objeto que se intenta allanar se encuentra en el sitio que se pretende registrar. *Jones* v. *U.S.*, 362 U.S. 257, 271 (1960). Y en *Aguilar* v. *Texas*, 378 U.S. 108 (resuelto el 15 de junio de 1964) se expresó que "aunque una declaración jurada no tiene que reflejar las observaciones directas personales del declarante, pudiendo basarse ésta en prueba de referencia. . . el magistrado tiene que ser informado de algunas de las circunstancias que la sostienen" de las cuales razonablemente puede inferirse que existe causa probable para la expedición de la orden de registro.

Establecido lo anterior pasemos a considerar la declaración jurada que sirvió de base para expedir la orden de registro.

El día 20 de octubre de 1963 comparece José Robles Robles ante un Juez de Paz y afirma bajo juramento "que el día 19 de agosto de 1963, como a las 7:00 A.M., lunes, vi cuando Juan Pérez c/p 'Delfo' chequeaba una lista de papel de estraza color brown, la cual contenía escrito a lápiz números de tres cifras seguidos de guiones y otras cantidades a la derecha, en unión a un individuo a quien conozco por Francisco, quien en momentos antes había llegado en un carro, marca Plymouth, color amarillo, con números de tablillas 801-069. Que vi que Juan Pérez c/p 'Delfos' le entregó dinero a Francisco y se internó en su casa, o sea en el 985 de

la Calle Pto. Príncipe, Urb. Las Américas, de Río Piedras, P.R."

Se establece en la declaración jurada que en un día específico, el 19 de agosto como a las siete de la mañana, el deponente observó cuando Juan Pérez c/p Delfos chequeaba una lista de papel que contenía escrito a lápiz números de tres cifras seguidos de guiones y otras cantidades a la derecha en unión a otra persona y que luego vio cuando se internó en su residencia, la cual describe.

En la declaración jurada se hace referencia únicamente a un acto específico ocurrido el 19 de agosto. El deponente no expresó en dicha declaración jurada que Juan Pérez acostumbraba a recibir, cotejar y manipular material de bolita en su residencia ni que lo hubiera visto con anterioridad o posterioridad a la fecha específica ya indicada recibiendo, cotejando o manipulando material de bolita en su residencia. La descripción que se hizo por el deponente de lo ocurrido en su presencia era suficiente para que una persona prudente y razonable hubiese creído que en la casa que se describe en la declaración probablemente había para esa fecha el material que se utiliza en el juego ilegal de la bolita. Específicamente el declarante afirmó haber visto cuando Juan Pérez c/p Delfos manipulaba "una lista de papel de estraza" conteniendo "números de tres cifras seguidos de guiones y otras cantidades a la derecha" de la cual el magistrado ciertamente podía inferir que dichas listas "no podían ser usadas para ningún otro fin que no fuera para jugar bolita." *Pueblo* v. *Mantilla*, 71 D.P.R. 36, 52 (1950).

Ahora bien, para determinar la causa probable, juega extraordinaria importancia el tiempo transcurrido desde que se observaron los hechos hasta que se solicita la orden de registro. Es de gran importancia, porque como hemos expuesto, para expedir la orden se requiere la existencia de causa probable y si los hechos observados son remotos no puede razonablemente afirmarse que existe causa probable a la fecha en que se solicita la orden.

■ En *Figueroa* v. *Tribunal de Distrito*, 72 D.P.R. 24, 31 (1951) expresamos que "la declaración jurada en que se funda una orden de allanamiento debe hacer referencia a la fecha en que se observó por el deponente la comisión del delito y que tal referencia en la declaración es esencial para la validez de la orden, no existiendo causa probable para la expedición de la misma en ausencia de tal requisito." Apuntamos que ésto era así porque los hechos podían haber ocurrido mucho antes de solicitarse la orden de registro y "como resultado de ello podía no existir causa probable para la expedición de la orden al momento en que la misma se libró." Y en *Pueblo* v. *Albizu*, 77 D.P.R. 896, 903 (1955) expresamos:

"Nuestra ley no prescribe período de tiempo determinado, luego de observados u ocurridos los hechos, dentro del cual deba prestarse la declaración jurada en que se funde la expedición de una orden de registro. Dicha declaración, sin embargo, debe exponer hechos tan cercanos a la fecha de su expedición que justifiquen una conclusión de causa probable en esa fecha, *Sgro* v. *United States*, 287 U.S. 206, 77 L.Ed. 260. Por eso debe prestarse dentro de un período razonable después de conocidos por el deponente los hechos que se expongan en ella, siendo parte de la función judicial, al determinar si hay causa probable, el estimar, en cada caso, si los hechos expuestos son tan remotos que no hagan probable la existencia de causa para el allanamiento. Véase monografía en 162 A.L.R. 1411 y 1414 et seq. En este caso los hechos consignados por el declarante no son remotos, ya que ocurrieron sólo 3 días antes de prestarse la declaración. Por eso no podemos convenir con el apelante en su argumento de que por haberse prestado la declaración 3 días después de los hechos, la orden expedida en virtud de la misma está viciada de nulidad."

Y en *Pueblo* v. *Rivera*, supra, a las págs. 751, 752 dijimos:

". . . En otras palabras, es en el affidávit que debe constar la fecha de la observación de suerte que el magistrado antes de autorizar la orden pueda juzgar si es o no demasiado remota y si la evidencia que se interesa ocupar puede aún estar en el sitio a ser allanado."

Los casos antes citados dejaron claramente establecido por este Tribunal que la declaración jurada solicitando la expedición de una orden de registro debe prestarse dentro de un tiempo razonable después de conocerse por el deponente los hechos que se expongan en ella. En *Albizu* citamos la Anotación que aparece en 162 A.L.R. 1406 donde al resumirse la jurisprudencia se expresa que cualquier término en exceso de treinta días es irrazonable.

 En el caso de autos el deponente afirma que observó los hechos en que fundó su solicitud para la expedición de la orden de registro el 19 de agosto de 1963, y no fue hasta el 20 de octubre siguiente, 62 días después, que acudió ante un magistrado en solicitud de la orden de registro. ¿Podía razonablemente concluir el magistrado que expidió la orden que el 20 de octubre todavía existía material de bolita en la residencia de Juan Pérez? Los hechos en que se fundaba la petición habían ocurrido 62 días antes. No creemos que podía razonablemente concluirse que la situación imperante el 19 de agosto subsistia 62 días después. El hecho de que el 19 de agosto el dueño de una residencia tuviera en su posesión material de bolita no quiere decir que el 20 de octubre siguiente continuara esa situación. No vemos cómo puede afirmarse que por el hecho de que una persona al frente de su residencia y antes de entrar en ella, "chequeaba una lista de papel de estraza color brown la cual contenía escrito a lápiz números de tres cifras seguidos de guiones y otras cantidades a la derecha," es normal y razonable concluir que dos meses después existía justa causa para creer que en dicha residencia había material del juego ilegal de la bolita. Es un acto aislado. Nada hay que justifique inferir que la situación descrita en la declaración jurada continuaba dos meses después. No existe afirmación alguna en la declaración jurada al efecto de que con posterioridad al 19 de agosto se observaran actividades relacionadas con la bolita en la residencia que se intentaba registrar. Si pudiera expedirse una orden de regis-

tro en estas circunstancias, estaríamos anulando la protección constitucional. Y debe siempre recordarse que la garantía constitucional constituye una restricción a la conducta oficial y una protección al ciudadano. Vale repetir que en *Ker* el Tribunal Supremo Federal reiteró que la Cuarta Enmienda "deberá ser objeto de interpretación liberal y a todos concierne el deber de vigilar para su más eficaz ejecución evitándose así que surja un deterioro en aquellas libertades para cuya protección fue adoptada."

Como expresamos en *Albizu* los hechos en que se funda una petición de orden de registro deben ser tan cercanos a la fecha de su expedición que justifiquen una conclusión de causa probable en esa fecha. Esa es la razón por la cual la petición debe hacerse "dentro de un período razonable después de conocidos por el deponente los hechos que se expongan en ella." El derecho que todo ciudadano tiene a que se le respete la tranquilidad de su hogar es uno demasiado fundamental para que hechos remotos justifiquen la expedición de una orden de registro.

En el caso de *Shoeneman* v. *United States*, 317 F.2d 173 (D.C. Cir. 1963) el acusado trabajaba como oficial de compras para el Departamento de la Marina en Washington. Markham el otro acusado representaba en la capital a compañías interesadas en obtener contratos del gobierno. En julio de 1960 Schoeneman y Markham constituyen una firma para representar a dueños de pequeños negocios que interesaban vender suministros al gobierno. Utilizaban la información que Schoeneman por su posición conseguía. En el curso de los negocios Schoeneman suplió a Markham información confidencial relacionada con compras futuras a hacerse por el Departamento de la Marina. Con el fin de conseguir un cliente Markham llevó a un tal Heins, el 15 de febrero de 1961 a su casa y le mostró la información confidencial. Heins informó de lo ocurrido al F.B.I. El 2 de junio de 1961 el agente del F.B.I. compareció ante un Comisionado Federal

para obtener una orden de registro. Se expidió la orden y se ocupó evidencia incriminatoria. Se acusó a Schoeneman y a Markham.

 Se impugnó la orden de registro. En la declaración jurada que le sirvió de base, se afirmó por el agente del F.B.I. que tenía información confiable sumistrada por una persona que había sido empleada del Departamento de Justicia y de la Tesorería de los Estados Unidos al efecto de que había visto en casa de Markham el 15 de febrero de 1961 documentos confidenciales propiedad del gobierno. Al resolver que no existía justa causa para el registro al momento de solicitarse la orden por el lapso de tiempo transcurrido desde la observación del hecho la Corte de Apelaciones para el Distrito de Columbia se expresó así a la pág. 177:

"De manera que la cuestión crucial aquí es si cuando se presentaron las declaraciones juradas al Comisionado éstas permitían determinar que existía causa probable para creer que los documentos oficiales todavía se encontraban en la morada. El gobierno descansa con gran fuerza en la naturaleza de la conspiración que en última instancia demostró que era enteramente posible que los libros vistos el 15 de febrero se encontraban en el lugar el 2 de junio. Sin embargo la elaborada trama que posteriormente se desarrolló no se describe en las declaraciones juradas. Meramente se alega que ciertos libros fueron vistos en la morada de Markham. No hay alegación al efecto de que los libros no se trasladaron durante los tres meses y medio que transcurrieron o, siquiera que el propio Markham no se hubiese mudado. Para sostener una orden de registro la prueba presentada 'deberá referirse al momento de la expedición de la orden. El Comisionado no tiene autoridad para descansar en declaraciones juradas que sólo se refieren a una fecha distinta *y no han sido puestas al día o suplementadas* para que se pueda pensar que las mismas revelan que existen fundamentos . . . al momento de expedirse la orden de allanamiento.' *Sgro* v. *United States,* supra, Nota 9, a la 211, 53 S.Ct. a la pág. 140. (Énfasis suplido.) Si los comisionados han de llevar a cabo una función útil al proteger ciudadanos contra registros arbitrarios, la causa probable deberá existir en la fecha en que se expide la orden y

no con el beneficio de un conocimiento posterior."

Claro está que no puede establecerse una regla rígida en cuanto al lapso de tiempo que puede transcurrir desde que se observan los hechos y se solicita la orden de registro. Lo que es razonable en un caso puede ser irrazonable en otro. El hecho de que el legislador estableciera en la ley un período de 10 días para ejecutar la orden de registro y nada dispusiera sobre el período que puede transcurrir entre la observación del hecho y la solicitud de la orden de registro parece confirmar lo antes expuesto. Cada caso deberá ser considerado de acuerdo con las circunstancias peculiares del mismo.

No obstante lo anterior no debe transcurrir un período excesivamente largo entre la observación de los hechos y la solicitud de la orden ya que como hemos apuntado la causa probable debe existir lo más cercana posible a la fecha en que se solicita la expedición de la orden de allanamiento.

■ Es por demás interesante apuntar que varía sustancialmente el lapso de tiempo que los tribunales han considerado razonable. Cuatro días entre la ocurrencia del hecho y la solicitud de registro ha sido considerado excesivo. *People* v. *Siemieniec*, 118 N.W.2d 430 (Mich. 1962). Es generalmente aceptado que un período de veinte días es razonable, y que en exceso de veinte días, hasta treinta, puede justificarse de acuerdo con las circunstancias presentes en cada caso. Se ha sostenido también que si ha transcurrido un lapso de más de treinta días no debe expedirse la orden de registro por considerarse que ya no existe la causa probable que requiere la disposición constitucional.

En I Varon, *Searches, Seizures and Immunities*, a las págs. 321, 322 se exponen los requisitos en cuanto a tiempo en los siguientes términos:

"(1) Una afirmación específica sobre la fecha en que se observó el supuesto delito deberá incluirse en la declaración jurada para obtener una orden de allanamiento y es esencial para la validez de una orden de registro que se base en dicha declaración jurada.

"(2) Dicha afirmación sobre la fecha de la alegada ofensa deberá ser clara, específica y no muy remota de la fecha en que se juró la declaración y se expidió la orden de registro.

"(3) Del contexto y circunstancias en que se hace una afirmación dependerá si ésta es lo suficientemente clara y específica en cuanto a la fecha como para satisfacer los requisitos expuestos bajo el (2).

"(4) No hay una regla inflexible para determinar si la afirmación sobre la fecha en que se observó el delito es muy remota de la fecha en que se hizo la declaración jurada o se emitió la orden de registro, pero en términos generales se ha sostenido que un lapso de tiempo menor de tres semanas no invalidará la orden de registro mientras que un lapso de más de cuatro semanas la anulará.

"(5) Un mero error de fecha en la declaración jurada por regla general no invalidará la orden de registro."

Ver además *Schoeneman* v. *United States,* supra; *United States* v. *Allen,* 147 F.Supp. 955 (D.C.E.D. Ky. 1957); *Dandrea* v. *United States,* 7 F.2d 861 (8th Cir. 1925); *Rupinski* v. *United States,* 4 F.2d 17 (6th Cir. 1925); *People* v. *Wright,* 116 N.W.2d 786 (Mich. 1962); *Hamelmann* v. *State,* 113 So.2d 394 (Fla. 1959); I Varon, *Searches, Seizures and Immunities,* págs. 320–322 (ed. 1961); Cornelius, *The Law of Search & Seizure,* Sec. 167 (ed. 1926); Anotación 162 A.L.R. 1406.

Durante la vista de la moción para suprimir la evidencia el policía que prestó la declaración jurada manifestó que había dejado transcurrir tanto tiempo "para cerciorarme más todavía seguí vigilando ese sitio y hasta que estuve completamente seguro." Además explicó que él era un agente encubierto y si se daba a conocer impedía continuar su labor de investigación.

▌ Para determinar si existe causa probable todos los hechos y circunstancias que justifiquen concluir la existencia de causa probable deberán exponerse en la declaración jurada. Nada expresó el deponente sobre las observaciones que alega hiciera con posterioridad al 19 de agosto. Y vale apun-

tar que cuando declaró durante la vista de la moción sobre supresión de evidencia tampoco expuso hechos específicos que hubiera observado con posterioridad a esa fecha.

█ El Procurador en un informe complementario levanta la cuestión de que estuvo justificada la tardanza por las mismas razones expuestas por este Tribunal para justificar la dilación en la radicación de acusaciones por infracción a la Ley de la Bolita. Son dos situaciones distintas. En *Pueblo* v. *Seda*, 82 D.P.R. 719, 726 (1961) sancionamos la demora en la radicación de una acusación por infracción a la Ley de la Bolita a pesar de que la ley expresamente disponía que se hiciera inmediatamente. Lo hicimos por "la necesidad de posponer el arresto o detención para no malograr una investigación en escala mayor sobre actividades clandestinas tales como vender bebidas, narcóticos y bolita. . ." Pero allí sólo se trataba de una disposición estatutaria que requería el arresto inmediato de la persona. El no practicarlo no le infringía sus derechos fundamentales garantizados por la Constitución. Aquí se trata de un derecho fundamental constitucionalmente garantizado. Sólo se autorizará el registro de una morada si existe causa probable de que en la misma se está cometiendo un delito. Y ya hemos visto que el tiempo transcurrido entre la observación del hecho y la petición de la orden de registro es fundamental para la determinación de causa probable. No podríamos, en aras de otras consideraciones, adoptar una norma que infringiera derecho tan fundamental.

El Procurador nos cita *People* v. *Dolgin*, 114 N.E.2d 389 (Ill. 1953) donde la corte sostuvo como razonable el período de 49 días transcurridos entre la observación de los hechos y la petición de registro. Aparte del hecho de que aparentemente es la única ocasión en que se ha considerado razonable un período en exceso de treinta días, las circunstancias

que rodean el caso son completamente distintas a la generalidad de los casos de registros. Para comenzar apuntamos que no se trata de una casa residencia que el tribunal tenía serias dudas de si en verdad se necesitaba una orden de registro. A ese efecto expresó a la pág. 394: "Más aún puede seriamente cuestionarse si una orden de registro era necesaria para hacer válido el allanamiento." El deponente declaró que en varias ocasiones durante un período comprendido entre el 24 de agosto y el 8 de octubre compró a varios detallistas cigarrillos que tenían sellos de rentas internas falsificados. Cuarenta y nueve días después de la última compra, juró la declaración que sirvió de base a la orden de registro contra el local donde estaba situada la compañía que manufacturaba los cigarrillos. Sosteniendo la validez de la orden el tribunal expresó: "Aquí el magistrado tenía ante sí evidencia de que la R. & L. Tobacco Co. había hecho en un área extensa y durante un período considerable de tiempo, repetidas ventas y entregas de cigarrillos con estampillas de arbitrios falsificadas. Entendemos que existía causa razonable para creer que el delito continuaba, de tal modo que aun luego de transcurrido el lapso de tiempo indicado, la expedición de la orden no sería impropia."

Como se observará los hechos son distintos y razonablemente podía inferirse que si por un tiempo prolongado se estaba vendiendo cigarrillos con sellos falsificados esa situación continuaría algún tiempo después. Además existía la circunstancia apuntada al principio de que la corte tenía grandes dudas de la necesidad de una orden de registro.

■ Aunque por otros motivos fue correcta la resolución del tribunal declarando con lugar la moción solicitando la supresión de la evidencia. *Se anulará el auto expedido.*

El Juez Asociado Señor Rigau disintió.

—O—

Opinión Disidente emitida por el Juez Asociado Señor Rigau.

9 de octubre de 1964

Yo también amo la Carta de Derechos, pero creo que para que los tribunales puedan decidir bien las controversias es necesario que le presten especial atención a los hechos particulares de cada caso. No basta tomar una regla sea ésta de la Constitución, de una ley, o de la jurisprudencia e instaurarla como premisa mayor, colocarle debajo y extraído fuera de contexto el punto controvertido en el caso (premisa menor) y como quien resta o suma, producir un resultado.

Tampoco debe impresionarnos demasiado el número de citas de casos *per se* que se incorporen a una opinión. Los casos no son sino decisiones de otros hombres hechas con vista a otros hechos, en otros lugares y en otras fechas. Los casos solo tienen valor persuasivo para el intelecto si el razonamiento que contienen es aplicable al caso bajo consideración. Salvo, desde luego, la situación que se da cuando un caso de un tribunal superior obliga necesariamente a un tribunal inferior, pero ésta no es la situación de autos.

Cualquiera que esté familiarizado con la bibliografía legal americana y con una biblioteca de derecho sabe lo fácil que es llenar cualquier número de páginas con citas de casos sobre prácticamente cualquier actividad humana. Basta examinar un tomo de "Corpus Juris Secundum", de "American Jurisprudence", el "Century Digest", los "Decennial Digests", el "General Digest", "Words and Phrases", "A.L.R.", "A.L.R.2d", etc., para darse cuenta de esto. El insigne profesor K. N. Llewellyn escribió, en idioma inglés, que la "Cititis" es una enfermedad generalizada y que su cura consiste en preguntarse ¿De dónde sacó Aristóteles lo que escribió? [1] Creo que una opinión jurídica se sostiene o se cae dependiendo de cual

[1] *The Bramble Bush,* ed. 1951, pág. 8.

es su razonamiento y no por el espacio destinado en ella a las citas.

El registro en este caso se hizo previa orden de allanamiento expedida por un magistrado. Dicha orden se expidió a base de una declaración jurada de un agente de la policía, cuya declaración es suficiente por los extremos que cubre y por la precisión con que los describe. Declaró el agente que le constaba de propio conocimiento, por haberlo visto, que el acusado "recibe, coteja y manipula material relacionado con el juego ilegal de la bolita, *en su residencia,* sita en . . ." (aquí informa la calle, número y pueblo). (Subrayado nuestro.) Es bueno aclarar que para la época en que el agente vio los hechos que describe en su declaración jurado, estaba trabajando como agente encubierto.

Además de lo antes expresado, el agente hizo constar en su declaración jurada que el 19 de agosto de 1963 vio cuando el acusado cotejaba una lista de papel, la cual contenía escritos a lápiz números de tres cifras seguidos de guiones y otras cantidades a la derecha, en unión a una persona conocida por Francisco, quién momentos antes había llegado a la casa del acusado en un automóvil marca Plymouth, color amarillo, tablillas Núm. 801-069. Luego la declaración jurada contiene una descripción pormenorizada de la casa en que ocurrieron los hechos y la cual sería allanada. Además dice dicha declaración que el antes mencionado automóvil está inscrito en la División de Automóviles del Departamento de Obras Públicas a nombre de Francisco Soto Ríos, residente en Avenida Borinquen 419, Barrio Obrero, Santurce, Puerto Rico.

Como se sabe, el criterio o medida para juzgar si existe causa probable no puede expresarse en términos rígidos y absolutos. La cuestión estriba en determinar si los hechos y las inferencias que se derivan de los mismos, a juicio de una persona prudente y razonable, bastan para creer que se está cometiendo o que se ha cometido el delito por el cual la ley

autoriza la expedición de una orden de allanamiento.(²) No es necesario que el magistrado que va a emitir la orden de allanamiento quede convencido de que en efecto se está violando la ley.(³) Basta con que el magistrado pueda razonablemente creer que es probable que se está violando la ley.(⁴) Por eso es que lo que va a determinar el magistrado se llama causa *probable;* no es causa segura.(⁵)

En el caso de autos se practicó el allanamiento y la policía ocupó en la residencia del acusado, material de bolita y $17,333.00 en efectivo, todo lo cual admite el acusado. La residencia del acusado es la misma descrita en la declaración que dio base para la orden de allanamiento. Se ocuparon allí treinta y cuatro listas de bolita escritas a lápiz, las cuales contenían números de tres cifras seguidas de un guión y otros números a la derecha. Hemos tomado conocimiento judicial de cómo se juega a la bolita en Puerto Rico. *Pueblo* v. *Mantilla,* 71 D.P.R. 36, 52 (1950).

Además de otros argumentos que no prosperaron, el acusado alegó que el registro hecho es ilegal porque desde la fecha en que el agente vio manipular el material de bolita, el 19 de agosto de 1963, hasta la fecha en que se prestó la declaración jurada, el 20 de octubre de 1963, transcurrió un lapso de tiempo irrazonablemente largo, siendo la fecha en que se observaron los hechos demasiado remota para que el magistrado que expidió la orden de allanamiento, el 20 de

---

(²)*Pueblo* v. *Rivera,* 79 D.P.R. 742, 747 (1956); *Carroll* v. *United States,* 267 U.S. 132 (1925); *Steele* v. *United States,* 267 U.S. 498 (1925); *Dumbra* v. *United States,* 268 U.S. 435 (1925).

(³)*Pueblo* v. *Rivera,* supra, pág. 747; *Brinegar* v. *United States,* 338 U.S. 160, 175 (1949).

(⁴)*Rugendorf* v. *United States,* 376 U.S. 528, 533 (1964).

(⁵)Más aún, el Tribunal Supremo de los Estados Unidos acaba de reiterar que no es necesario que la declaración jurada esté basada en información personal del declarante (como lo fue en el caso de autos), sino que puede estar basada en información de referencia (*hearsay information*). *Aguilar* v. *Texas,* 378 U.S. 108, resuelto en 15 junio 1964. En el mismo sentido, *Jones* v. *U.S.,* 362 U.S. 257 (1960).

octubre de 1963; pudiese determinar si la evidencia que se interesaba ocupar estaría aún en el sitio a ser allanado. Esto es precisamente el corazón del problema planteado: si a base de esa declaración jurada hecha bastante tiempo después de observados los hechos, una persona prudente, en este caso particular, podría creer que existía la probabilidad de que en ese lugar se estuviese violando la ley.

En efecto transcurrieron sesenta y dos días entre la fecha en que el agente encubierto vio los hechos y la fecha en que hizo la declaración jurada. Eso *prima facie* parece un término demasiado largo, pero es que, como dije antes, los tribunales no podemos, o no debemos, resolver los casos *prima facie*. No podemos hacer jurisprudencia de impresiones. No basta leer la carta de Derechos, extraer fuera de contexto el punto controvertido y entonces llegar a una conclusión de espaldas a los hechos del caso.

Como dijimos en *Pueblo* v. *Albizu*, 77 D.P.R. 896, 903 (1955), "nuestra ley no prescribe período de tiempo determinado, luego de observados u ocurridos los hechos, dentro del cual deba prestarse la declaración jurada en que se funde la expedición de una orden de registro." Dijimos allí que la declaración debe prestarse "dentro de un período razonable después de conocidos por el deponente los hechos que se expongan en ella, siendo parte de la función judicial, al determinar si hay causa probable, el estimar, en cada caso, si los hechos expuestos son tan remotos *que no hagan probable la existencia de causa para el allanamiento*." (Subrayado nuestro.) Nótese que la sustancia del problema es si hay o no causa probable al tiempo en que se pide la orden de allanamiento.

En cambio, la ley sí dispone que una vez obtenida una orden de allanamiento la misma deberá ser cumplimentada "dentro de los diez días siguientes de la fecha de su libramiento". Regla 232 de las Reglas de Procedimiento Criminal. Las dos reglas enunciadas, una jurisprudencial (la de la razonabilidad del período de tiempo) y la otra positiva (el

término de diez días para cumplimentar la orden), no son caprichosas. Tienen su razón de ser, como señalaré más adelante. (⁶)

La naturaleza del delito es tal vez el factor más importante para determinar si es probable que se esté *todavía* (luego de observados los hechos y al hacerse la declaración jurada) cometiendo el delito en cuestión, al expedirse la orden de allanamiento. Hay delitos que solo pueden cometerse una vez, como por ejemplo, darle muerte a un ser humano determinado. Otros, aunque pueden cometerse por un período corto de tiempo no pueden seguirse cometiendo indefinidamente, como por ejemplo, darle una paliza a un ser humano. Otros delitos sí pueden seguirse cometiendo durante muchos días, como por ejemplo, la impresión de sellos de rentas internas falsos, el jugar a la bolita o el operar una banca de bolita, y las conspiraciones subversivas ilegales.

De manera que juega papel principalísimo *la naturaleza del delito* en el momento en que el magistrado va a determinar si existe o no causa probable para la expedición de la orden de allanamiento. Es claro que si hace sesenta días $A$ le estaba dando una paliza a $B$ dentro de una casa ya, transcurrido ese tiempo, no se podría rescatar a $B$ de su suplicio entrando en dicho lugar. Pero lo mismo no puede decirse del juego de la bolita. Por el contrario, lo normal y probable es que si allí se estaba jugando a la bolita u operando una banca de bolita, todavía se continúe cometiendo dicho delito, mientras no se haga algo para impedirlo. (⁷) El magistrado que expidió la orden en este caso estaba justificado en creer que existía causa probable, en creer que era probable que

---

(⁶) Nótese además que la Regla 234 de las de Procedimiento Criminal, que es la regla que relaciona los fundamentos por los cuales se puede solicitar la supresión de evidencia obtenida mediante un allanamiento ilegal, no contiene el fundamento que aquí invoca el acusado.

(⁷) La propia Ley de Evidencia dispone que "una vez probada la existencia de una cosa continúa ésta todo el tiempo que ordinariamente duran las cosas de igual naturaleza." 32 L.P.R.A. sec. 1887(31).

allí se estaba violando la ley. Es inefable la inocencia que exhibe la opinión mayoritaria al decirnos que "es un hecho aislado" la operación de bolita observada y descrita por el agente en su declaración.

La naturaleza del delito en el caso de autos hace que el mismo satisfaga el requisito de razonabilidad que expusimos en *Pueblo* v. *Albizu,* supra, pág. 903. El requisito allí expuesto no es uno ciego y rígido sino uno realista, para ser aplicado jurisprudencialmente a cada caso particular según sus circunstancias lo justifiquen.

Creo que se equivoca la mayoría en cuanto a la importancia que da al factor tiempo, al expresar en su opinión que "para determinar la causa probable juega *extraordinaria* importancia el tiempo transcurrido desde que se observaron los hechos hasta que se solicita la orden de registro." (Subrayado nuestro.) Aunque el tiempo transcurrido es un factor que hay que considerar al hacer esa determinación, a mi juicio, como he señalado, el factor más importante es la naturaleza del delito. Lo contrario es supeditar la substancia—si es probable que se esté cometiendo delito o no—a lo accesorio —el tiempo transcurrido. En otras palabras, es coger el rábano por las hojas.

Un segundo factor o elemento justifica el período que transcurrió en este caso entre el día que se observaron los hechos y el día en que se hizo la declaración jurada y se obtuvo la orden de allanamiento. Las violaciones a la Ley de la Bolita, así como a la Ley de Narcóticos, son muy difíciles de descubrir y los objetos materiales utilizados en dichas violaciones—listas de papel, píldoras, etc.—son fáciles de esconder. Ambas clases de delito dan margen a la comisión de otros. Como expresamos en *Pueblo* v. *Luciano Arroyo,* 83 D.P.R. 573, 585–586 (1961), el juego ilegal de la bolita causa graves males sociales en Puerto Rico. Por su conducto se escurren grandes sumas de dinero que pertenecen en su casi totalidad a los grupos económicamente débiles; ha fa-

cilitado la creación y consolidación de organizaciones criminales profesionales que de esa actividad saltan a otras socialmente más peligrosas, y que constituyen un elemento erosivo en el cuerpo social y aun para la propia fuerza pública, cf. *Pueblo* v. *Adorno*, 81 D.P.R. 518 (1959). Por ser tan nocivos y de tan difícil descubrimiento la sociedad, a través de su estado, utiliza agentes encubiertos y confidentes (*"informers"*), en sus esfuerzos por descubrir dichos delitos. *Roviaro* v. *U.S.*, 353 U.S. 53, 59 (1957); *Scher* v. *U.S.*, 305 U.S. 251, 254 (1938); *In re Quarles and Butler*, 158 U.S. 532 (1895); *Vogel* v. *Gruaz*, 110 U.S. 311, 316 (1884).

Es debido a la naturaleza de los delitos que hemos mencionado que la fuerza pública hace la labor investigativa (que necesariamente tiene que hacer antes de radicar acusaciones) operando por sectores geográficos. Como toma tiempo cubrir un determinado sector y como una vez conocido públicamente el agente encubierto o el confidente (como consecuencia de los procesos judiciales) ya dichos agentes encubiertos y confidentes no son útiles para esos fines, resulta necesario e inevitable que transcurra un lapso de tiempo apreciable entre la fecha en que el agente encubierto observa los hechos y la fecha de la declaración jurada y el allanamiento.

Como las órdenes de allanamiento una vez obtenidas hay que cumplimentarlas dentro de 10 días después de expedidas, es natural que entre la observación de los hechos delictivos y la prestación de la declaración jurada por el agente (hecha para obtener la orden de allanamiento) pase un período apreciable de tiempo. Debido a ese límite de diez días es que los agentes no pueden llevar el asunto al magistrado y obtenida la orden, entonces esperar a que esté completa la investigación para hacer los allanamientos. En un caso como el de autos la dilación no fue viciosa sino necesaria y socialmente útil. Ya en *Pueblo* v. *Tribunal Superior*, 81 D.P.R. 455, 470 (1959), habíamos reconocido la "necesidad de posponer el arresto o detención para no malograr una investigación en

escala mayor sobre actividades clandestinas tales como ventas de bebidas, narcóticos y bolita o sobre actos subversivos." Eso lo reiteramos en *Pueblo* v. *Seda*, 82 D.P.R. 719, 726 (1961). Como ha dicho el Tribunal Supremo de los Estados Unidos, es contrario al bien público descubrir la identidad de los agentes encubiertos a menos que esto sea esencial para la defensa del acusado en el juicio. *Scher* v. *U.S.*, supra, a la pág. 254. V. también *Segurola* v. *U.S.*, 16 F.2d 563, 565 (1926); *Shore* v. *U.S.*, 49 F.2d 519, 522 (1931); *McInes* v. *U.S.*, 62 F.2d 180 (1932). Cf. *Roviaro* v. *U.S.*, supra.

Un caso similar al de autos y que fue decidido por el Tribunal Supremo de Illinois en la forma que yo propongo es el de *People* v. *Dolgin*, 114 N.E.2d 389 (1953). En este caso el acusado imprimía sellos de rentas internas falsos. Igualmente que en este caso, la policía utilizó un agente encubierto para obtener la evidencia para procesarlo. Al acusado se le hicieron varias compras de sellos. Desde la fecha de la primera compra de sellos falsos a la fecha en que se prestó la declaración jurada transcurrieron 94 días. Desde la fecha en que se hizo la última compra hasta la fecha en que se prestó la declaración jurada transcurrieron 49 días. Se obtuvo la orden de allanamiento, se hizo el allanamiento y se obtuvo la evidencia. El acusado solicitó la supresión de la misma alegando, como en el caso de autos, que el lapso de tiempo transcurrido entre la observación de los hechos delictivos y la prestación de la declaración jurada había sido irrazonablemente largo.

En el citado caso de *Dolgin* el tribunal expresó, a la pág. 393, que se le trajeron a su atención algunos casos a la luz de los cuales dicho lapso de tiempo parecía irrazonable pero que los mismos no se trataban de ofensas que podían continuar indefinidamente como en el caso bajo su consideración. Declaró el tribunal que no hay regla fija sobre este punto y que la determinación de si la fecha en que se observaron los hechos es muy remota o no depende de las circunstancias de

cada caso. La única importancia que tiene el factor tiempo en el asunto, dijo el tribunal, es en relación con el problema de si al expedirse la orden de allanamiento hay o no causa probable. Ésa es la posición que yo he propuesto en esta opinión. En *Dolgin*, supra, el tribunal sostuvo que dada la naturaleza del delito el período de tiempo transcurrido entre la observación de los hechos y la prestación de la declaración jurada no era irrazonable y que por el contrario había causa razonable para expedir la orden. V. también en el mismo sentido, *People* v. *Montgomery*, 189 N.E.2d 327, 328 (1963).

El propio caso federal citado en la opinión mayoritaria de *Shoeneman* v. *U.S.*, 317 F.2d 173 resuelto el año pasado, expresa, a la pág. 177, como criterio para la expedición de una orden de allanamiento válida que "la causa probable deberá existir a la fecha en que se expide la orden. . ." Eso es todo lo que yo propongo.

Puede advertirse que mi dificultad con la opinión de la mayoría es que yo entiendo que el derecho no consta de una serie de reglas de aplicación mecánica, sino que creo que hay que elaborar una decisión para cada caso según sus circunstancias y sus méritos. Como dijera el Juez Holmes en su célebre disenso en *Lochner* v. *N.Y.*, 198 U.S. 45, las reglas generales no deciden casos específicos. (*General propositions do not decide concrete cases.*)

De la estrecha teoría silogística de la aplicación de la ley se han ocupado, para criticarla, connotados juristas. Creo que la actitud y el enfoque que esta opinión disidente evidencia están acordes con lo que estimo son las mejores tendencias en la aplicación del derecho. Véase Castan, *Teoría de la Aplicación e Investigación del Derecho*, Madrid, Editorial Reus, 1947, págs. 11–23. También de Castan, véase sobre el particular, *La Formulación Judicial del Derecho*, Madrid, Editorial Reus, 1954, págs. 1–17, y lo que sobre el particular dice en su *Derecho Civil Español, Común y Foral*, Parte General, Tomo I, Vol. I novena ed., 1955, pág. 351.

De Roscoe Pound, véase su *"Mechanical Jurisprudence"*, en 8 Colum. L. Rev. 603 (1908); su *"Theory of Judicial Decision"* en 36 Harv. L. Rev. 641, 802 y 940 (1923); su *Law Finding Through Experience and Reason*, 1960; y también *Jurisprudence*, 1959, Vol. III, págs. 507–513. De Puig-Brutau véase *La Jurisprudencia como Fuente del Derecho*, Barcelona, Ed. Bosch, págs. 1–55. De Cardozo, su *Nature of the Judicial Process* (1921), págs. 161–162. De W. Friedman, véase su *Legal Theory*, 4ta. ed., 1960, Cap. 31, págs. 401 y ss. En la 3ra. ed. (1953) es el Cap. 21, pág. 291 y ss.

Un análisis racional como el que yo propongo y como el que hizo el Tribunal Supremo de Illinois en el citado caso de *Dolgin* no puede sustituirse con una loa a la Carta de Derechos. No es cuestión de ser o no ser "liberal", es cuestión de elaborar jurisprudencia de frente a la realidad.