EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JAN S. BOGARD y MARY BOGARD, acusados y apelantes.

*Número*: CR-71-89        *Resuelto*: 6 de abril de 1972

566

*Gerardo Ortiz del Rivero,* abogado de los apelantes; *Gilberto Gierbolini, Procurador General,* y *Cándita R. Orlandi, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Los apelantes Jan S. Bogard y Mary Bogard fueron acusados conjuntamente con otra persona de dos infracciones a la Ley de Narcóticos de Puerto Rico, consistentes en (1) tener en su posesión y dominio la droga narcótica conocida como marihuana y (2) ocultar y transportar dicha droga.

Una moción sobre supresión de evidencia presentada por la defensa fue declarada sin lugar. Celebrado el juicio por tribunal de derecho, luego de haber los apelantes renunciado válidamente a su derecho a juicio por jurado, fueron declarados culpables y sentenciados a cumplir concurrentemente de 6 a 9 años en cada cargo. Se ordenó la suspensión de la sentencia a tenor con lo dispuesto en la Ley Núm. 259 de 1946 sobre Sentencias Suspendidas.

En este recurso señalan la comisión del siguiente único error:

"ERRO el Honorable Tribunal de Instancia al determinar que el allanamiento en este caso era legal y razonable nò empece el

hecho de que el método empleado por los Agentes para obtener los fundamentos que dieron base a la expedición de la Orden de Allanamiento constituía un registro ilegal e irrazonable de los acusados en violación al Artículo II, Sección 10 de la Constitución del Estado Libre Asociado de Puerto Rico y a la Cuarta Enmienda de la Constitución de los Estados Unidos."

Un magistrado expidió una orden de allanamiento para registrar la residencia 122 A, Calle Venus 122, Urbanización Atlantic View, Carolina, Puerto Rico y su predio.

El método de investigación observado por los agentes a que aluden los apelantes, se describe en la declaración jurada prestada por el agente Félix Fuente Ortega, de la cual copiamos a continuación aquella parte pertinente:

"El día 20 de marzo de 1968 fuí asignado a investigar en relación a una supuesta siembra de Marihuana en el patio de la residencia 122-a de la calle Venus de la Urbanización Atlantic View, Carolina, Puerto Rico. Como a las 10:00 a.m. de ese día hice observaciones hacia el patio de la residencia antes mencionada pudiendo observar tres matas como de dos pies de alto y con hojas delgadas y dentadas cuya consfiguración [sic] física es la de la planta de marihuana. Que el día 21 de marzo de 1968 continué haciendo vigilancia hacia el patio de [la] residencia 122-a de la calle Venus, Atantic View de Carolina, P.R. y como a las 9:30 a.m. ví cuando salieron por la puerta trasera de la residencia antes mencionada, dos hombres y una mujer, quienes se dirigieron a donde están las plantas de marihuana sembradas. Las descripciones de estos individuos son las siguientes: # 1—Varón, 21 años de edad aprox., 5′ 7″ estatura, blanco, pelo castaño claro, 150 libras de peso aprox., vestía pantalón corto, camisa y tenía puesto unos espejuelos claros; # 2—Varón, 21 años de edad aprox., pelo negro ondeado, blanco, ojos azules, bigote y chiva, 5′ 8″ estatura, 160 libras de peso, vestía traje de baño y camiseta blanca; # 3—Mujer, 18 años de edad, estatura 5′ 5″, blanca, pelo corto rubio, 115 libras de peso, vestía pantalón mahón corto y blusa colorada corta.

El hombre a quien señalo como el # 1 cogió unas hojas de las plantas de marihuana y luego fueron hasta una caceta [sic] que hay en el patio y después entraron todos a la residencia 122-a. El mismo día 21 de marzo de 1968 como a las 2:30 p.m.

observé que la mujer a quien describo como la # 3 bajó del apartamiento 122-a con una botella plástica y le hecho [sic] un líquido claro a la tres plantas de marihuana. Que puedo asegurar que la tres plantas son de marihuana por mi experiencia en investigaciones del tráfico ilícito de drogas, en las cuales he intervenido con siembras de marihuana anteriormente. Así como adiestramiento recibido en la Oficina de Investigaciones Especiales del Departamento de Hacienda y por adiestramiento recibido en la Escuela Federal de Narcóticos en Washington D.C. La residencia 122-a se encuentra ubicada en un edificio de cemento, 2 plantas, contres [sic] apartamientos 122-a, 122-b y 122-c. Dicho edificio tiene una escalera por el frente, con dirección de 122, Calle Venus, Atlantic View, Carolina, P.R. El apartamiento 122-a se encuentra localizado en la planta baja del edificio y mirándolo de frente por la calle Venus, queda a la derecha. Tiene puerta por el frente y por detrás. A mano derecha tiene marquesina y ventanas tipo miami. La puerta trasera se comunica con el patio el cual está cercado parcialmente con alambre eslabonado. En el patio hay una caceta [sic] de madera. Colinda este apartamiento, 122-a, por el norte con la calle Venus, por el sur con los patios de las residencias de la Srta. Ada Piña y familia Llompart Tavarez, por el este con el apartamiento 122-c y por el oeste con la residencia del Sr. Jorge Vázquez.

Por las observaciones hechas por mí durante los días 20 y 21 de marzo de 1968 estoy convencido que en [el] patio y la residencia 122-a hay marihuana en violación al [sic] Ley de Drogas y Narcóticos de Puerto Rico y respetuosamente solicito se expida una Orden de Allanamiento de Morada y sus premisas para el apartamiento 122-a de la calle Venus, Atlantic View, Carolina, P.R. y ocupar allí cualquier artículo en violación a la Ley de Drogas y Narcóticos de Puerto Rico.

QUE lo declarado es la verdad." (Escolio 2, Informe del Procurador General)

Diligenciada la orden de allanamiento se ocupó un tallo y 5 plantas de marihuana, una bolsa plástica con picadura y un cigarrillo y un frasco con hojas de marihuana, un frasco plástico con dos cigarrillos y una colilla de marihuana, un sobre blanco de semilla de marihuana y dos pipas que dieron positivo de marihuana.

En el juicio el agente Fuentes Ortega declaró que desde el patio de la familia Piña, a quienes pidieron permiso para ello, observaron a través de una verja de alambre (*cyclone fence*) lo que había sembrado en el patio de la residencia 122-A de la calle Venus, así como los movimientos de sus residentes en dicho patio.

La contención de los apelantes es que la actuación del Agente Fuentes Ortega, al espiar el patio de dichos apelantes, constituye un registro ilegal. Llama además nuestra atención al hecho de que el Agente no hizo constar en su declaración jurada los medios de que se valió para observar el patio de la residencia de los apelantes.

En cuanto a la suficiencia de la declaración jurada los apelantes citan el caso de *Pueblo* v. *Tribunal Superior*, 91 D.P.R. 19 (1964), donde se dice que en *Aguilar* v. *Texas*, 378 U.S. 108, se expresó que "aunque una declaración jurada no tiene que reflejar las observaciones directas personales del declarante, pudiendo basarse ésta en prueba de referencia . . . el magistrado tiene que ser informado de algunas de las circunstancias que la sostienen." En el mismo caso de *Pueblo* v. *Tribunal Superior*, supra, citando otros del Tribunal Supremo de los Estados Unidos y Tribunales Federales, dijimos: "Al determinar que es causa probable no estamos llamados a establecer si la ofensa que se imputa fue verdaderamente cometida. Nos concierne sólo la cuestión de si el deponente tuvo base razonable, al momento de prestar la declaración jurada y haberse librado la orden de registro, para creer que se estaba violando la ley en el lugar a ser allanado; y si los hechos aparentes que se desprenden de la declaración jurada son de tal naturaleza que una persona prudente y razonable pudiera creer que se ha cometido la ofensa imputada, hay la causa probable que justifica la expedición de una orden." Hemos resuelto también que en casos sobre allanamientos y registros no se requiere una interpretación técnica y restrin-

gida de la declaración del agente. *Pueblo* v. *Soto Zaragoza*, 99 D.P.R. 762 (1971).

■ La declaración jurada prestada por el agente Fuentes Ortega cumple con la ley y la jurisprudencia. Expuso el agente que las observaciones que hizo fueron el resultado de labor de vigilancia hacia el patio de la residencia de los acusados. Ello era suficiente para informar al magistrado como obtuvo la información sobre los hechos que justificaban la expedición de la orden de allanamiento. (1)

■ Respecto a su contención principal, los apelantes descansan fundamentalmente en los casos de *Katz* v. *United States*, 389 U.S. 347; *Mancusi* v. *De Forte*, 392 U.S. 368 y en otros casos de este Tribunal que son claramente inaplicables. En el caso de *Katz* los agentes del gobierno interceptaron un teléfono público, aunque sin penetrar físicamente en la caseta del teléfono, para escuchar y grabar las conversaciones telefónicas del acusado. Se dijo en dicho caso que lo que una persona muestra o descubre al público, aunque sea en su propia casa u oficina no constituye materia protegida por la Cuarta Enmienda pero lo que esa persona desea mantener en privado aun en un área accesible al público puede estar constitucionalmente protegido, como por ejemplo, lo que la persona lleva consigo en un automóvil público, *Ríos* v. *United States*, 364 U.S. 253, 4 L.Ed.2d 1688, o las cartas y paquetes que la persona deposita en el correo, *Ex Parte Jackson*, 96 U.S. 727, 24 L.Ed 877. En el caso de *Katz* se abandona la doctrina de que para invocarse la protección de la Cuarta Enmienda debe haber una incursión física (*trespass*) del lugar o predio. (2) En el caso de *Mancusi* se resolvió que era ilegal el incautarse de papeles sin orden de allanamiento en una amplia oficina usada por un oficial de una unión que compartía con otras personas,

---

(1) Véase, en cuanto a que la declaración jurada no tiene que contener cuestiones elaboradas y específicas, *United States* v. *Scolnick*, 392 F.2d 320, *Cert. den.* 329 U.S. 931, 20 L.Ed.2d 1389.

(2) Véanse, sin embargo, *United States* v. *White*, 401 U.S. 745.

aun cuando los papeles no estaban en la parte de la oficina reservada para el uso personal del oficial. Se ha dicho que en esta área de registros y allanamientos, cada caso deber ser juzgado a base de sus propios hechos particulares. *Lewis* v. *United States*, 385 U.S. 206, 17 L.Ed.2d 312; *Ker* v. *California*, 374 U.S. 23, 10 L.Ed.2d 726.

■ En el reciente caso de *White* v. *United States*, 401 U.S. 745, se dijo, que conforme a los principios enunciados en *Katz*, el problema consiste en determinar que expectaciones de privacidad son constitucionalmente justificables, esto es, que expectaciones serían protegidas por la Cuarta Enmienda en ausencia de una orden de allanamiento.

■ La expectación de privacidad que invocan los apelantes en el presente caso, no está constitucionalmente justificada, ni por tanto protegida por la Cuarta Enmienda. El patio de la residencia de los apelantes donde mantenían la siembra de plantas de marihuana, está dividida del patio de la residencia de la familia Piña por una verja de alambre (*cyclone fence*) que permite ver de un patio a otro. Las siembras de marihuana estaban expuestas a la vista de la familia Piña así como a la de sus invitados y la de cualquier otra persona que, con permiso de dicha familia, penetrara en su patio.

No puede sostenerse el argumento de que la familia Piña autorizara el registro de la residencia de los apelantes. Desde donde se situaron los agentes para hacer sus observaciones, se veía lo que cualquier otra persona situada en dicho patio podía ver a través de la verja de alambre. En tales circunstancias los apelantes no podían esperar que las actividades que llevaban a cabo en su patio se mantuvieran en privado. Los agentes estaban legalmente en el patio de la familia Piña y no venían obligados a cerrar sus ojos para no ver lo que desde allí se podía ver. Véase *People* v. *Boone*, 82 Cal. Reptr. 398 y casos allí citados.

No habiéndose cometido el error señalado, se confirmarán las sentencias apeladas.

El Juez Presidente, Señor Negrón Fernández, no intervino.