EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SU-
PERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. HER-
MINIO MIRANDA, JUEZ, demandado.

*Número:* O-69-44      *Resuelto:* 27 de junio de 1969

*J. F. Rodríguez Rivera, Procurador General Interino,* y *Elpidio
Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El juez de instancia accedió a suprimir toda la evidencia

ocupada mediante un registro llevado a cabo con una orden de allanamiento. (¹) Dictó la siguiente resolución:

"Surgiendo de la prueba ofrecida por la defensa, y la cual no fue controvertida por el fiscal [el fiscal no ofreció prueba] que la evidencia obtenida al allanar la residencia de la acusada se obtuvo en una dependencia de dicha residencia distinta a la mencionada y señalada tanto en la declaración jurada del Agente Padilla, como en la orden de allanamiento, resolvemos que su ocupación fue ilegal y por tanto procede su supresión y en efecto así se ordena."

Accedimos a revisar.

En la declaración jurada que sirvió de base para expedir la orden de allanamiento el agente hace constar que sabe de propio conocimiento que Wilfredo Tapia Rodríguez c/p "El Único" guarda, posee y tiene para la venta envolturas de papel color blanco amarrada con *tape* transparente y que dichas envolturas contienen dentro la droga conocida por heroína. Que dichas envolturas las transporta en el auto marca *Mustang*, modelo 1965, tablillas 732-472 y luego las guarda en un cuarto a la parte izquierda que queda a la entrada de su apartamiento #108 (B) de los apartamientos

---

(¹) La evidencia ocupada es la siguiente:

"(1) 1,203.00 (Mil doscientos tres) dólares dinero americano; (2) un sobre amarillo conteniendo 25 envolturas papel blanco rayado (decks); (3) un sobrecito similar al anterior conteniendo 22 envolturas iguales (decks), un paquete conteniendo 186 pedazos de papeles o envolturas color blancas a rayas, 12 sobres amarillos, una libreta Royal Memo Book, una funda plástica conteniendo polvo blanco; un sobre manila conteniendo 2 goteros, y una chapita enganchada en una hebilla, un vaso plástico y dentro del mismo un gotero con su aguja hipodérmica conteniendo un líquido rojo; 2 fundas de papel estraza conteniendo residuos de picadura color brown; 2 cucharitas plásticas amarillas; una tijera; un revólver marca Colt police Positive Special, calibre 38, niquelado, cachas de madera, serie 868287, sortija de graduación 1966 iniciales CRD; pulsera con ticket K-9, una pulsera con dos charms en oro; dos relojes de mujer; otro reloj mujer color oro blanco; tres relojes hombre color oro; sortija brillante estilo herradura; sortija brillante color oro; 2 juegos sortijas matrimonio, uno blanco y uno color oro."

Silva, Calle Bolívar, Pda. 24, Santurce, Puerto Rico, primera planta.

En la orden de allanamiento se expuso, basándose en la declaración jurada, lo siguiente:

"Que el apartamiento 108(B) radica en la primera planta de los apartamientos Silva en calle Bolívar, Pda. 24, Santurce, P.R.; que el edificio donde radican estos apartamientos es de 2 plantas, construido en hormigón pintado de crema y es el 761 de la referida calle.

Que el apartamiento 108(B) colinda por el lado derecho con el apartamiento #107. Que el edificio donde están ubicados los apartamientos Silva colinda por el lado derecho con un local que lleva el #763, por el lado izquierdo con el #759 que es una casa de familia, por detrás con una casa de familia y por el frente, con la calle Bolívar; todo en la Pda. 24, Santurce, Puerto Rico.

. . .

este magistrado entiende que dicha declaración y del examen del declarante existe causa probable para librar esta orden, y se le ordena por lo tanto que durante las horas <u>o de la noche</u> , <u>del día o de la noche</u> proceda inmediatamente al registro de <u>el cuarto a la parte iz-</u> <u>en apartamientos</u> quierda a la entrada de el apto. 108(B) en busca de la siguiente <u>Silva, Calle Bolívar, Sant. P.R.</u> propiedad mueble *todo lo relacionado con la venta, uso, posesión y tráfico de heroína y cualesquiera otros que estén prohibidos por ley* y si fueren en su totalidad o en parte halladas por usted, las traiga inmediatamente y conjuntamente con la orden diligenciada a mi presencia en el Tribunal de Distrito de Puerto Rico, Sala de San Juan, P.R."

A las ocho de la mañana del 4 de diciembre de 1967 se llevó a cabo el registro. En el apartamiento vivían Wilfredo Tapia y Gloria María Ortiz Centeno con su hijita de 3 años. A la izquierda entrando hay tres habitaciones. La niña ocupa la primera. La segunda sus padres. La tercera la usan para

planchar. Declara la señora que oyó tocar a la puerta, pero que ella estaba en camisa de dormir, "yo me levanté, entonces, fui al cuarto donde estaba la nena, como que se asustó . . . . Entonces, la calmé, entonces, como estaba en camisa de dormir todavía, viré para atrás, cogí una bata y me la puse y abrí la puerta y cuando abrí la puerta, me dijeron 'son de la policía' pues, entren, yo le dije . . . me metí a la habitación. Cuando yo entré a la habitación me cogió por un brazo, yo segure [*sic*] la puerta, ella como se puso nerviosa y yo la abrí también, le dije 'espérese en lo que me quito el traje', no así, ábrame esa puerta, como yo no tenía . . . pues, abrí . . . no tenía ningún motivo por qué tener la puerta cerrada . . . . La abrí y cuando la abrí entraron como cinco hombres a la habitación, entonces, me dice 'rebúsquela' me tocaron y ella sacó un paquete." Registraron un mueble en el mismo cuarto y encontraron un revólver y unas prendas. En un maletín que estaba en el closet encontraron el dinero. La señora admite que se encontraron en la bata que ella usaba los sobres (*decks*) y en la habitación el dinero, el revólver y las joyas. Su contención es que la orden expedida autorizaba a registrar solo el primer cuarto a la izquierda entrando.

Dispone la Constitución de Puerto Rico que "[s]olo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse y las personas a detenerse o las cosas a ocuparse."

▪ Las palabras de la Constitución son claras y precisas. Es obvio su propósito. Garantizar la privacidad del ciudadano y limitar el ámbito del registro. Protege a la persona, a su hogar y a sus pertenencias de incautaciones arbitrarias. Es uno de los pilares en que descansa la libertad individual. En *Stanford* v. *Texas*, 379 U.S. 476 (1965) el Juez Stewart

relata el desarrollo histórico de la disposición correspondiente en la Constitución de los Estados Unidos: la Cuarta Enmienda, resaltando su trascendencia.

■ Es indispensable que se describa con precisión el local, la casa o el edificio a registrarse. No debe estar sujeta a interpretación. Debe especificarse claramente el lugar a registrarse. Así se hizo en el presente caso. Se ordenó registrar el apartamiento 108(B) de los Apartamientos Silva sito en la Calle Bolívar #761 de la Parada 24 de Santurce. Se consigna que está pintado de crema y ubicado en la primera planta. Difícilmente puede describirse con más precisión el lugar a registrarse.

■ El hecho de que se expresara en la orden de allanamiento que se ordenaba el registro "de el [sic] cuarto a la parte izquierda a la entrada del Apto. 108(B)" no debe interpretarse a que limita el registro a un solo cuarto del apartamiento. El apartamiento en cuestión estaba habitado por una sola familia compuesta de Wilfredo Tapia, su compañera Gloria Ortiz y la hijita de éstos. Todo el apartamiento estaba bajo su posesión y en la declaración jurada del agente que solicitó la orden de allanamiento se hace referencia que Wilfredo Tapia luego de venderle unos *decks* que resultaron ser de heroína entró al apartamiento que ocupaba en la Calle Bolívar y que detalladamente describe. Era innecesario hacer referencia a una habitación específica de ese apartamiento. Como estaba ocupado por una sola familia la autorización a registrarlo no cabía limitarla a una sola pieza del apartamiento. Fundándose en causa probable se había autorizado a quebrantar la privacidad de sus ocupantes. Una vez dentro del apartamiento no había razón alguna para limitar el registro al primer cuarto entrando a la izquierda. La declaración jurada establecía que en el apartamiento 108(B) ocupado por Wilfredo Tapia se escondían drogas. Considerado en conjunto todo lo expresado

en la declaración jurada y en la orden de allanamiento es obvio que se autorizó a registrar todo el apartamiento. Es la interpretación razonable. Ver *State* v. *Aiello*, 221 A.2d 40 (N.J. 1966); *Pueblo* v. *Cruz Martínez*, 92 D.P.R. 747 (1965) y Anotación, *Search Warrant: Apartment or Room*, 11 A.L.R.3d 1330 (1967) *Chimel* v. *California*, 395 U.S. 752, 37 L.W. 4613, decidido el 23 de junio de 1969, no milita en contra de lo que aquí resolvemos.

*Por lo antes expuesto se revocará la resolución recurrida y se devolverá el caso al tribunal de instancia para ulteriores procedimientos.*