EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ SOTO ZARAGOZA, MIGUEL A. APONTE, NICOLÁS A. PÉREZ ROJAS, CARLOS MUÑOZ VELÁZQUEZ, acusados y apelantes.

*Número:* CR-70-51 *Resuelto:* 17 de marzo de 1971

*Rafael L. Ydrach Yordán* y *Santos P. Amadeo,* abogados de los apelantes; *Gilberto Gierbolini, Procurador General* y *Jorge Ríos Torres* y *Dolores Ruiz de Zambrana, Procuradores Generales Auxiliares,* abogados de El Pueblo.

PER CURIAM: Los apelantes fueron enjuiciados y convictos de tener en su posesión material de bolita y/o bolipool (33 L.P.R.A. sec. 1250). Fueron condenados a pagar una multa de $1,000 cada uno.

Apuntan que el tribunal sentenciador incidió:

1.—Al denegar la moción de supresión de evidencia porque la declaración del agente encubierto en que se fundó la orden de allanamiento es falsa; dicha orden es irrazonable y opresiva, expedida sin causa probable; no describe particular-

mente los objetos a ocuparse y, por último, porque "la operación de registro se cogió de subterfugio, para una operación de redada policíaca ya que en vez de arrestar cuando supuestamente vio el material de bolita en manos de una persona, esperó 2 días para hacerlo mediante orden de allanamiento."

2.—Al condenar a los apelantes a base de prueba falsa e increíble.

3.—Al admitir en evidencia la prueba producto del allanamiento la que en vez de estar en *custodia legis* se encontraba en fiscalía.

4.—Al negarle a la defensa el derecho a examinar la declaración jurada de un testigo de cargo el cual fue renunciado por el fiscal en el juicio.

Veamos primeramente los hechos del caso.

La declaración jurada del agente Padilla que sirvió de base para la expedición de la orden de allanamiento la resume correctamente el Procurador General así:

"El lunes 11 de marzo de 1968, como a las once de la noche mientras se encontraba el agente Padilla en la plaza de Carolina pasó en un automóvil amarillo, marca Chevrolet, licencia 750-373, el individuo Antonio Ramírez c/p Toño a quien el agente conocía con anterioridad. Antonio Ramírez se paró, hablaron un rato y el agente Padilla le preguntó si ya había ido a recoger el material de bolita a casa de un individuo de nombre Roque Estrada. Ramírez le contestó que sí, que lo llevaba en el carro. Al preguntarle el agente que para donde iba, éste le contestó que para la Urbanización Sabana Garden e invitó al agente a seguirlo con su carro. Ramírez llegó a la calle 18 esquina 19, se desmontó. Padilla le preguntó si ahí era que iba a dejar el material de bolita, Ramírez contestó que sí y procedió a sacar del bolsillo derecho delantero del pantalón alrededor de 20 a 30 listas de papel en forma de rollo. Le preguntó Padilla que si tan poco era el material, contestándole Ramírez que habían bastantes listas porque los números que iban jugándose en esas listas era con mucho dinero. Abrió uno de los paquetes y le enseñó una lista en la que aparecían de 15 a 20 números de tres cifras seguidos de guión y otros números a la derecha,

en cantidades de 5, 3 y 2 dólares. Acomodó las listas nueva-mente, las amarró con 'rubber bands' y se dirigió con dicho paquete de listas a la residencia número 19, tocó a la puerta y una señora blanca abrió y Antonio Ramírez le entregó las listas. Luego se fueron hasta la parada 18, donde un amigo de Ramírez para unas orejitas de caballo."

Examinado dicho agente por un magistrado con respecto a la referida declaración, entendió éste que existía causa probable para extender la orden que autorizó el registro de la propiedad en cuestión en busca de "todo lo relacionado con el juego ilegal de la bolita."

La prueba demuestra que el día del allanamiento Padilla indicó la casa a otros agentes de la División Control del Vicio; que éstos entraron en ella luego de tocar a la puerta la cual se les abrió; que ". . . Sorprendieron allí a Miguel Aponte y Nicolás A. Pérez, sentados en sillas y sobre una mesa de porcelana operaban con un sinnúmero de listas, nú-meros de tres cifras, seguidos de guión y otras cantidades a la derecha. El acusado, Miguel Aponte operaba una máquina de sumar y Nicolás Pérez trabajaba con unas listas. Al fondo de la habitación, a mano izquierda, despegadas de la cama habían tres sillas. En una de ellas operaba una máquina de sumar el acusado, José Soto Zaragoza, y frente a él en la cama había un sinnúmero de listas y paquetes que cons-taban de números de tres cifras, guión y otras cantidades a la derecha. Sobre la cama había un sinnúmero de paquetes y listas conteniendo números de tres cifras seguidas de guión y otras cantidades a la derecha. Se tomaron fotografías del cuarto descrito y del exterior de la residencia. En total se ocuparon mil cuatrocientas veintiocho (1,428) listas de papel de distintos tamaños y colores conteniendo números de tres cifras, guiones, espacio, otras cantidades a la derecha, otros con doble guión, sencillos y cantidades a la derecha. Se ocu-paron, además, quinientas once (511) libretas de bolipool, diecinueve (19) listas de cotejo donde según un policía decla-

rante, por su experiencia, es donde los individuos ponen al dorso el total de todas y cada una de las listas de números que reciben, tres cajas de 'rubber bands', rollos de papel grandes y pequeños, usados para la máquina de sumar, cuatro cajas de clip, papel, lápices rojos y azules, un maletín que estaba debajo del apelante, Miguel A. Aponte, un revólver marca Colt, baqueta, licencia de tenencia y posesión de Carlos Muñoz y una caja con nueve balas de revólver."

". . . . . . .

"En la persona del acusado, José Soto Zaragoza, al ser registrado se encontraron dos listas de papel que contenían números escritos, guión, un espacio y cantidades distintas a la derecha; una cartulina con números escritos, un cheque por el valor de $2,216 del Banco Mercantil, expedido por un tal Manuel Fernández Corujo y $886 en efectivo. Toda esta evidencia estuvo bajo el poder del agente que practicó el registro y fue llevada a la Sala de Investigaciones, donde quedó en poder del tribunal.

"Igualmente en la persona de Miguel Ángel Aponte Hernández al ser registrado se encontró material relacionado con el juego de la bolita."

La prueba de descargo trató de establecer la falsedad de la declaración jurada de Padilla a base de que Antonio Ramírez lo conocía y sabía que era un agente encubierto desde mucho antes de la fecha en que según Padilla lo vio y habló con el testigo sobre el material de bolita que Ramírez llevaba.

1–2. La declaración jurada del agente Padilla era suficiente para sostener la declaración de causa probable. *Pueblo v. Tribunal Superior*, 97 D.P.R. 517, 519, 521 (1969); *Pueblo v. Luciano Martínez*, 83 D.P.R. 411 (1961); *Edmondson v. United States*, 402 F.2d 809, 813 (10th Cir. 1968); *Manderosian v. United States*, 337 F.2d 759 (1st Cir. 1964); *Minovitz v. United States*, 298 F.2d 682 (D.C. Cir. 1962).

 Arguyen los apelantes que no había base para ordenarse ocupar "todo lo relacionado con el juego ilegal de la bolita", sino ciertas listas que fueron objeto de percepción visual por parte del agente. No tienen razón. En estos casos no se requiere una interpretación técnica y restringida de la declaración del agente. Se ha sostenido una orden de allanamiento donde no se nombran los artículos o cosas a ocuparse sino los "instrumentos del crimen." *Pueblo* v. *Tribunal Superior,* supra. En *United States* v. *Robinson,* 287 F.Supp. 245 (D.C. Ind. 1968), se dictaminó que:

"Los funcionarios que llevan a cabo un registro legal de acuerdo con la correspondiente orden pueden incautarse de cualesquiera frutos, instrumentos o prueba del delito que puedan descubrir. Una orden de allanamiento debe describir específicamente el lugar a ser registrado y las cosas a ser incautadas y el registro debe dirigirse hacia las cosas descritas. Pero si en el curso del registro se descubren artículos no mencionados en la orden que pudieran haberse incautado en un registro incidental a un arresto, ésos también pueden incautarse en un registro de acuerdo con la orden al efecto." *Aron* v. *United States,* 382 F.2d 965 (8th Cir. 1967); *United States* v. *Eisner,* 297 F.2d 595 (6th Cir. 1962); *United States* v. *Guido,* 251 F.2d 1 (7th Cir. 1958).

 El hecho de que el agente pudiera haber arrestado a Ramírez cuando lo vio con material de bolita dos días antes del allanamiento no quiere decir que el registro de la morada constituyese una treta detectivesca y por lo tanto nula. Dijimos en *Pueblo* v. *Palacios Amador,* 96 D.P.R. 695, 698 (1968), que un allanamiento no es irrazonable porque el agente haya visto unos días antes, a la persona cuya actuación da base para la orden de allanamiento, realizar actos que constituyen una infracción a la ley y no procedió a su arresto inmediato.

 3. Como indica el Procurador General, el valor probatorio de la evidencia no depende del lugar en que se encontraba guardada antes de presentarse en el juicio sino de la apreciación que de la misma haga el juzgador luego de

admitida. El apelante no objetó la admisión de evidencia alguna por este fundamento durante el juicio. No puede hacerlo en apelación excepto mediante la revelación de circunstancias excepcionales las cuales ni aparecen del récord ni el apelante ha traído a nuestra atención.

4. No constituyó error por parte del juez sentenciador el negarle a la defensa el derecho a examinar la declaración jurada prestada por un testigo de cargo el cual fue renunciado por el fiscal en el juicio, el cual fue celebrado en 8 de octubre de 1968 y puesto a la disposición del apelante por ser de carácter acumulativo. La norma que adoptamos en *Pueblo* v. *Quiñones Ramos*, 99 D.P.R. 1 (resuelto en 13 de abril de 1970) al efecto de permitir a la defensa inspeccionar tales declaraciones juradas no estaba disponible para el apelante a la fecha del juicio en esta causa pues proveímos para que rigiera a partir del 1ro. de mayo de 1970.

En vista de lo expuesto, *debe confirmarse la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 24 de octubre de 1968.*

El Juez Asociado Señor Hernández Matos disintió.