EL PUEBLO DE PUERTO RICO
Recurrido

v.

EDWIN ROSARIO RODRIGUEZ
RICHARD ROSARIO RODRIGUEZ
Acusados-Peticionarios

Núm. KLCE-95-00099

San Juan, Puerto Rico, a 5 de junio de 1995

Panel integrado por su presidenta, Juez Ramos Buonomo
y los Jueces Cordero y Ortiz Carrión

Ortiz Carrión, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los peticionarios recurren de una resolución del Tribunal de Primera Instancia, Sala de Bayamón, Hon. Ramón E. Gómez Colón, Juez Superior, en la cual se declaró sin lugar una moción de supresión de evidencia en un caso en que se les imputan sendas violaciones a los Artículos 6 y 11 de la Ley de Armas.

Los peticionarios plantean esencialmente que el tribunal *a quo* erró al calificar como razonable el registro de un automóvil que estaba estacionado dentro de la marquesina de una estructura residencial contra la que se expidió una orden de registro y allanamiento para ocupar todo lo relacionado con sustancias controladas y armas. Para sostener su planteamiento de que el registro fue irrazonable los peticionarios alegan que ni la orden, ni la declaración jurada, que sirvió de base para su libramiento, hacen mención sobre la marquesina de la residencia, ni sobre el automóvil donde se hallaron las armas cuya supresión solicitan.

Después de examinar el recurso de certiorari junto a su apéndice, este Tribunal entiende que los peticionarios no tienen razón.

Según surge de la resolución cuya revisión se solicita, durante la vista de supresión de evidencia testificó el agente Remigio Ramos Meléndez, adscrito a la División de Drogas Metropolitana, quien dirigió el registro y allanamiento que provoca la solicitud de supresión y de cuya declaración surgen los hechos pertinentes a la cuestión planteada.

## I

El 3 de agosto de 1994, el Juez de Distrito Carlos Cabán, libró una orden de registro y allanamiento, basándose en una declaración jurada del agente Roberto Cruz, quien realizó una investigación confidencial sobre tráfico ilegal de sustancias controladas y armas en una estructura residencial ubicada en el Municipio de Bayamón. El texto de la orden especificó el lugar a ser allanado y registrado y las cosas a ser incautadas de la siguiente manera:

*"La residencia número D-31, de la Avenida San Agustín de la Urbanización Villas de San Agustín de Bayamón, Puerto Rico. La cual está construida en concreto, de una planta, pintada de blanco y alero azul. El número D-31 está claramente visible, en busca de armas de fuego, todo lo relacionado con sustancias controladas y cualquier otro objeto que estuviere en violación a las leyes del Estado Libre Asociado de Puerto Rico."*

El agente Ramos testificó que el 4 de agosto de 1994 diligenció la orden en compañía de varios policías. Según su testimonio, la estructura residencial allanada tenía una sala, cocina y comedor divididos entre sí por un mostrador *"counter"*, cuatro dormitorios, un baño y una marquesina donde había dos automóviles estacionados, la cual estaba cerrada con rejas y candado excepto por la puerta de acceso a la cocina. De acuerdo al testimonio del agente Ramos Meléndez, mientras él registraba la cocina, otro policía le informó que dentro de un auto Acura, estacionado en la marquesina, había varios peines de balas a plena vista. El automóvil estaba cerrado, pero el agente Ramos Meléndez logró abrirlo con unas llaves de auto que había en la cocina. Al abrirlo, vio una pistola marca Taurus calibre 9 mm en el piso frente al asiento del conductor, la cual incautó junto a los dos peines de quince balas de 9 mm que había visto previamente. Además, en la residencia se incautaron $18,119.00, joyas, parafernalia, *"scanners"* y un biombo de la Policía de Puerto Rico.

## II

La Carta de Derechos Sección 10 del Artículo II de la Constitución del Estado Libre

Asociado, garantiza la protección contra registros, incautaciones y allanamientos irrazonables.

Esta sección establece lo siguiente:

*"No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.*

*No se interceptará la comunicación telefónica.*

*Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Evidencia obtenida en violación de esta sección será inadmisible en los tribunales."*

Las Reglas 230 y 231 de las de Procedimiento Criminal instrumentan la garantía de tal derecho, 34 L.P.R.A. Ap. II-A. La Regla 230 de las de Procedimiento Criminal establece lo siguiente:

*"Podrá librarse orden de allanamiento o registro para buscar y ocupar propiedad*

*(a) hurtada, robada, estafada, u obtenida mediante extorsión.*

*(b) que ha sido, está siendo, o se propone ser utilizada como medio para cometer delito."*

A su vez, la Regla 231 de las de Procedimiento Criminal establece los requisitos de forma y contenido que debe tener una orden de allanamiento y dispone:

*"No se librará orden de allanamiento o registro sino en virtud de declaración escrita, prestada ante un magistrado bajo juramento o afirmación, que exponga los hechos que sirvan de fundamento para librarla. Si de la declaración jurada y del examen del declarante el magistrado quedare convencido de que existe causa probable para el allanamiento o registro, librará la orden en la cual se nombrarán o describirán con particularidad la persona o el lugar a ser registrado y las cosas o propiedad a ocuparse. La orden expresará los fundamentos habidos para expedirla, y los nombres de las personas en cuyas declaraciones juradas se basare. Ordenará al funcionario a quien fuere dirigida registre inmediatamente a la persona o sitio que en ella se indique, en busca de la propiedad especificada, y devuelva al magistrado la orden diligenciada, junto con la propiedad ocupada. La orden dispondrá que será cumplimentada durante las horas del día, a menos que el magistrado, por razones de necesidad y urgencia, dispusiere que se cumplimente a cualquier hora del día o de la noche."*

Por último la **Regla 232** regula el diligenciamiento de la orden de registro y allanamiento.

*"La orden de allanamiento o registro sólo podrá ser cumplimentada y devuelta diligenciada dentro de los diez (10) días de la fecha de su libramiento. El funcionario que la cumplimente dará a la persona a quien se le ocupe la propiedad, o en cuya posesión se encuentre, copia de la orden y un recibo de la propiedad ocupada, o dejará dicha copia y recibo en el sitio donde se ocupare la propiedad. El diligenciamiento irá acompañado de un inventario escrito de la propiedad ocupada, hecho en presencia de la persona que solicitó la orden, y de la persona a quien se le ocupó o en cuya casa o local se ocupó la propiedad, de estar dichas personas presentes, y si alguna de ellas no lo estuviere, en presencia de alguna otra persona que fuere digna de crédito. El inventario será jurado por el diligenciante. A*

*requerimiento de la persona que solicitó el allanamiento o registro, o de la persona a quien le fuere ocupada la propiedad, el magistrado entregará a éstas copia del inventario."*

De este modo, las Reglas de Procedimiento Criminal regulan el contenido de las órdenes de registro y allanamiento, y el diligenciamiento de las mismas por parte de los funcionarios del orden público.

En *Pueblo v. Soto Zaragoza,* 99 D.P.R. 762, 767 (1971) el Tribunal Supremo de Puerto Rico al interpretar el ámbito de autoridad que una orden de registro y allanamiento le confiere a los funcionarios del orden público para incautarse de objetos, señala lo siguiente:

*"Los funcionarios que llevan a cabo un registro legal de acuerdo con la correspondiente orden pueden incautarse de cualesquiera frutos, instrumentos o prueba de delito que puedan describir. Una orden de allanamiento debe describir específicamente el lugar a ser registrado y las cosas a ser incautadas y el registro debe dirigirse a las cosas descritas. Pero si en el curso del registro se descubren artículos no mencionados en la orden que pudieran haberse incautado en un registro incidental a un arresto, esos también pueden incautarse en un registro de acuerdo con la orden al efecto.*

La **Regla 231** limita al máximo la discreción de los agentes del orden público que diligencian la orden. Por eso, según la **Regla 231**, el lugar a registrarse no debe estar sujeto a interpretación. Sin embargo, una vez se especifica una estructura o local, no es necesario hacer referencias a sus partes o divisiones o a los objetos muebles que están dentro del lugar. *Pueblo v. Tribunal Superior,* 97 D.P.R. 517, 521 (1969). En el caso de autos, la orden de allanamiento está correctamente redactada. Esta especifica de forma razonable la estructura residencial cuyo allanamiento se autoriza. La omisión de incluir la marquesina como una de las partes de la residencia, cuyo allanamiento se autorizó, no afecta en nada la razonabilidad de la orden. La marquesina es parte integral de la estructura cuyo allanamiento se autorizó mediante orden judicial. *Pueblo v. Tribunal Superior, supra.*

El contenido de la orden, de conformidad con la **Regla 231,** debe incluir todo lo que se ordena: *"ordenará al funcionario a quien fuera dirigida registre inmediatamente la persona o sitio que en ella se indique, en busca de la propiedad especificada, y devuelva al magistrado la orden diligenciada, junto con la propiedad ocupada."*

Un registro autorizado por orden judicial puede extenderse hasta cualquier parte del área cubierta por la estructura que especifica la orden, aún cuando su acceso esté cerrado. *Pueblo v. Tribunal Superior, supra.* Es suficiente que la orden especifique la estructura cuyo allanamiento se ordene. No es necesario que se enumeren los muebles, gabinetes o armarios que se pueden registrar. El Tribunal Supremo de los Estados Unidos explica esto con gran precisión en *United States v. Ross,* 456 U.S. 798 (1982).

*"A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marijuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand."*

Basándose en estas consideraciones varios Tribunales de Apelaciones de los Estados Unidos, han resuelto que una orden de allanamiento de una estructura o local, cubre los automóviles que estén dentro de ese local al diligenciarse la orden. Sobre ésto refiérase a los siguientes casos: (1) *United States v. Asselin,* 775 F.2d 445 (1st Cir. 1985); (2) *United States v. Percival,* 756 F.2d 600 (7th Cir. 1985); (3) *United States v. Bulgatz,* 693 F.2d 728 (8th Cir. 1982) (en este caso se autorizó el registro aunque el vocablo *"vehículo de motor"* se había tachado en la solicitud de orden), cert. denied 459 U.S. 1210 (1983); (4) *United States v. Napoli,* 530 F.2d 1198 (5th Cir. 1976), cert. denied 429 U.S. 920 (1976). La premisa sobre la cual se sostiene el resultado de estos casos es que los automóviles deben considerarse como cualquier otro mueble o efecto personal que se encuentran en el local allanado. Máxime, cuando, como ocurre en el caso de autos, en la declaración jurada en la cual se basa la orden de allanamiento se mencionó que unos automóviles fueron vistos entrando y saliendo de la residencia y uno de ellos estaba en la marquesina el día del allanamiento junto a otro, que aunque no fue mencionado en la declaración jurada, cuyas llaves estaban bajo control de los peticionarios. Así por ejemplo, en *United States v. Percival, supra,* resolvió que una orden que autoriza un registro de un local específicamente identificado, también autoriza el registro de cualquier vehículo que esté adentro, bajo el control de la persona a cargo del lugar. Además, resolvió que la posesión de las llaves del vehículo constituye de por sí prueba suficiente de control. Sobre esto refiérase además a 2 Wayne R. La Fave, *Search & Seizure, A Treatise on the Fourth Amendment,* Section 4.10 (c) en la pág. 322 (1987), quien señala que un automóvil está menos ligado a un inmueble que un closet o un gabinete, pero está tan ligado como lo estaría un bulto o una cartera ubicada en el lugar al momento del allanamiento. Coincidimos con el Profesor La Fave, que cuando existe el propósito de autorizar el registro de un vehículo bajo el control de los ocupantes de un local, la mejor práctica consiste en incluir su descripción en la orden de allanamiento. Sin embargo, también coincidimos en que para que un allanamiento de un vehículo ubicado en un local sea válido, no es necesario cumplir con esa práctica. De este modo, concurrimos con la mayoría de los tribunales que han resuelto este tipo de controversia.

Por otra parte, en el caso de autos, el registro del automóvil, no sólo estaba autorizado por la orden de registro de la residencia, en cuya marquesina estaba estacionado, sino que además, el registro del vehículo se efectuó por existir evidencia delictiva sobre su consola, a plena vista de los policías que estaban diligenciando el allanamiento.

En *Pueblo v. Dolce,* 105 D.P.R. 422 (1976) el Tribunal Supremo de Puerto Rico establece que cuando la prueba delictiva se descubre por estar a plena vista de funcionarios públicos que entran a un lugar de forma autorizada, no es necesario una orden judicial para que su incautación se considere razonable.

En el caso de autos la pistola ocupada fue vista en el piso del Acura cuando la policía abrió el auto para incautarse de los peines de bala que estaban a plena vista sobre la consola del auto.

De este modo, la incautación de la pistola no sólo fue el resultado de una orden válida que autorizaba el registro de todos los objetos que se encontraban en cualquiera de las partes de la referida estructura, sino que además fue descubierta en el proceso de incautar evidencia delictiva localizada a plena vista, mientras los funcionarios públicos diligenciaban una orden válida.

Por los fundamentos anteriormente expuestos, se expide el auto solicitado, y se confirma la resolución cuya revisión se solicita.

Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.