UNITED STATES, Appellee,

v.

Jeffery Lewis BULGATZ, Appellant.

UNITED STATES, Appellee,

v.

Elizabeth BULGATZ, Appellant.

Nos. 82–1517, 82–1531.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1982.

Decided Nov. 10, 1982.

Rehearing and Rehearing En Banc
Denied Dec. 9, 1982.

Certiorari Denied Feb. 22, 1983.
See 103 S.Ct. 1203.

James M. Rosenbaum, U.S. Atty. by John M. Lee, Asst. U.S. Atty., argued, Minneapolis, Minn., Robert S. Soskin, Legal Intern, for appellee.

Phillip S. Resnick, argued, Robert Davis, Minneapolis, Minn., for Elizabeth Bulgatz.

Kenneth Meshbesher, argued, Meshbesher, Singer & Spence, Ltd., Minneapolis, Minn., for Jeffery Lewis Bulgatz.

Before McMILLIAN and ARNOLD, Circuit Judges, and VAN SICKLE,* District Judge.

VAN SICKLE, District Judge.

Appellants Jeffery and Elizabeth Bulgatz, together with Juan Ramirez, Consuelo Paz, and Wendy Waldron were charged with participation in a cocaine distribution scheme. Prior to trial the government dismissed charges against Paz, and Waldron pled guilty and became the government's chief witness.

Appellants filed pre-trial motions to suppress evidence seized at their house pursuant to a search warrant issued by a state judge. A United States magistrate denied appellants' motions.[1] Appellants renewed their motions before the district court,[2] which subsequently denied the motions as well as appellants' motions for separate trials. Late in trial when it appeared from testimony given by the affiant that the affidavit supporting the search warrant contained a misstatement, the appellants moved to reopen the suppression hearing. The district court denied this motion.

The jury returned its verdict finding Elizabeth Bulgatz guilty of aiding in the distribution of cocaine on two separate occasions, conspiracy to distribute cocaine, and possession of cocaine with intent to distribute. The jury convicted Jeffery Bulgatz of possessing cocaine with intent to distribute and conspiring to distribute cocaine but acquitted on the charge of aiding in the distribution of cocaine. The jury acquitted Juan Ramirez on all charges.

The district court having denied appellants' motions for a judgment of acquittal

---

* The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota, sitting by designation.

1. The magistrate, however, granted Juan Ramirez's motion to suppress evidence seized from his apartment.

2. The Honorable Diana Murphy, United States District Judge for the District of Minnesota.

or a new trial and having pronounced sentence, the appellants appealed to this court.

Taken in the light most favorable to the government, the evidence shows that on two occasions Elizabeth Bulgatz delivered cocaine to Waldron's house and waited there for payment while Waldron sold the drugs at the Radisson-South Hotel. On October 21, 1981, Waldron arranged to sell one ounce of cocaine to James Hessel, who was actually a state narcotics agent. At 6 p.m. that evening, Elizabeth drove to Waldron's house in a car registered to Jeffery Bulgatz and delivered one ounce of cocaine to Waldron, who left and sold it at the Radisson to Hessel. Hessel and Waldron discussed another sale of a larger quantity and Waldron told Hessel that the girl who supplied the cocaine was waiting for her at Waldron's house and that she would return there to see if the girl could supply an additional 5 ounces. Waldron returned home and paid Elizabeth for the sale.

On October 30, 1981, Hessel told Waldron he wanted to buy 8 ounces of cocaine for $16,800. Waldron checked with Elizabeth and got the "go ahead" and made plans with Hessel to make the delivery on November 3 at 6 p.m. At 4:30 p.m. surveillance agent Cziok observed Jeffery Bulgatz arrive home in an airport cab, carrying a duffel bag and wearing a leather coat. At 5:15 agent Campion observed Elizabeth leave her house and drive to Ramirez's apartment. Agent Shanley then observed Ramirez get into Elizabeth's car, and leave shortly thereafter. Elizabeth then drove to Waldron's house and delivered 8 ounces of cocaine. Waldron sold the cocaine to agent Hessel at the Radisson. Minutes after the

sale, state narcotics agents arrested both Waldron and Elizabeth.

At 10:00 p.m. that evening narcotics agents arrived at the Bulgatz house to execute a search warrant. Jeffery Bulgatz was at home, and after a search, the agents recovered 8 ounces of cocaine and a gram scale from the master bedroom, a note describing weight equivalents and a cocaine handbook from the duffel bag, and two airline tickets, one dated November 3, from New York City in the name of R. Smith, in the leather coat. The agents' search of a car parked in the attached garage recovered $14,000 in cash from the trunk.

Appellants raise three issues: (1) the sufficiency of the affidavit to support the search of their residence, (2) the allegation that the affidavit contained a material misstatement, and (3) the district court's refusal to grant separate trials.[3]

I. Was there probable cause to justify the warrant authorizing the search of the Bulgatz residence?

In determining whether the evidence before the magistrate justified his finding of probable cause to search the Bulgatz residence, this court must apply the following standards:

[T]hat only the probability, and not a prima facie showing of criminal activity is the standard of probable cause; that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial; that in judging probable cause issuing magistrates are not to be confined by niggardly limitations, or by restrictions

---

**3.** Two other issues were raised that do not warrant extended discussion. First, appellant Jeffery Bulgatz argues that the evidence was insufficient to support his convictions for possessing cocaine. Having reviewed the records and the briefs, we find ample evidence to support both convictions.

Second, both appellants argue that the search warrant issued did not authorize search of their car parked in the garage attached to the house. This contention is contrary to set-

tled law. *See, United States v. Napoli,* 530 F.2d 1198, 1200–1201 (5th Cir.1976), *Brooks v. United States,* 416 F.2d 1044 (5th Cir.1969), *cert. denied,* 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75. The fact that affiant had crossed out the words "motor vehicle" on the search warrant application did not preclude search of an automobile on the premises, but only indicated that the general object of the search was the "premises," not the automobile.

on the use of their common sense; and that their determination of probable cause should be paid great deference by the reviewing court.

*Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1968) (citations omitted). Further, the issuing magistrates need not base their findings of probable cause on facts alleging direct observation of criminal activity but may base their findings on normal inferences drawn from the surrounding circumstances and allegations of fact as well as the type of crime. *United States v. Brown,* 584 F.2d 252, 256 (8th Cir. 1978).

Appellants argue that the facts before the magistrate did not justify his finding of probable cause because the affidavit alleged no facts connecting the Bulgatz residence with criminal activity other than the fact that Elizabeth Bulgatz lived there.

■ We disagree. We believe the affidavit provides sufficient factual support to justify the magistrate's inference that illegal drugs and items related to those drugs would be found at the Bulgatz residence. First, the fact that Elizabeth Bulgatz started from her residence shortly before allegedly delivering drugs to Waldron on November 3, suggests that drugs were kept at the Bulgatz house. Nothing in the affidavit would suggest that the drugs originated elsewhere,[4] and given the common assumption that drug suppliers do not ordinarily carry large quantities of expensive drugs on their person,[5] one would assume that the drugs were kept in the safety of her home. Further, the fact that Waldron stated that Elizabeth was her supplier for a previous sale[6] and that Ramirez and Elizabeth were equal partners in an active drug business further suggests that Elizabeth would have drugs and drug paraphernalia at a place of safekeeping, here most likely in her home.

While these facts do not leave an unbroken trail to the Bulgatz residence, they do lead us to believe that there was a probability of criminal activity at the Bulgatz residence as required under *Spinelli.* Further, whatever modicum of doubt there might be about the probability of criminal activity must under *Spinelli* be resolved by deferring to the issuing magistrate's findings of probable cause. Hence, we conclude that the issuing magistrate was justified in finding probable cause to search the Bulgatz residence.

II. Did the trial court err in denying appellants' motion to reopen the suppression hearing because of misstatements in the affidavit?

■ Appellants argue that the trial court erred in denying their motion for a hearing on the issue whether the warrant to search the Bulgatz residence was invalid because the affidavit supporting the warrant contained a reckless or deliberate misstatement.[7]

4. Contrary to what was stated in the affidavit, testimony at trial indicated that Bulgatz could have gotten the drugs from Ramirez when he entered her car. However, for purposes of the probable cause issue, this discrepancy has no bearing, although it is an object of concern in the discussion to follow on the allegation of material misstatement.

5. As it turns out, Elizabeth Bulgatz did not have any drugs on her person when arrested, but since this was not stated in the supporting affidavit it is not proper for this court to consider this fact in adjudging the magistrate's finding of probable cause. *See, Aguilar v. Texas,* 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 1511 n. 1, 12 L.Ed.2d 725 (1964); *United States v. Lyon,* 567 F.2d 777, 782, (8th Cir.1977).

6. Bulgatz's role in the previous sale is corroborated by the surveillance reports contained in the affidavit.

7. It may be argued that appellants waived their rights to raise the issue of misstatements in the affidavit since they did not raise this issue at the suppression hearing held prior to trial. Yet because the critical prerequisite for finding a waiver of the right to challenge a search warrant requires that counsel failed to exercise a known right, *Whitney v. United States,* 513 F.2d 326, 328 (8th Cir.1974), and the appellant could not raise the issue until the truth came out at trial, we find no waiver.

■ In order to receive a hearing on this issue, two conditions must be met:

1. The challenger must allege that the affiant made statements which were deliberately false or in reckless disregard for the truth, and in addition must offer proof of this allegation.

2. If the challenger meets this condition, the court must find that the affidavit is insufficient to justify a finding of probable cause without the statements alleged to be false.

*Franks v. Delaware,* 438 U.S. 154, 171–72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978); *United States v. Davis,* 663 F.2d 824, 829 (9th Cir. 1981).[8]

Here appellants clearly alleged to the district court that the affiant had made a misstatement in his affidavit. They pointed out that agent Campion in his affidavit states that just prior to the sale on November 3, when Elizabeth drove to Ramirez's apartment, she got out of her car and talked with Ramirez for a few seconds on the front steps, but agent Shanley in his surveillance report states that Elizabeth remained in her car and Ramirez entered it and remained there for approximately 30 seconds.

■ However, appellants offered no proof of recklessness or deliberateness in connection with that misstatement. Rather, they only pointed out to the district court why they believed that the misstatement was material. They argued that if Elizabeth had actually met Ramirez in the seclusion of her car, then it is logical to assume that Ramirez gave her the drugs rather than that Elizabeth got the drugs from her house. Because appellants failed to offer proof that the misstatement was reckless or deliberate, they failed to meet the first condition required for a hearing. Hence, we find that the district court was correct in denying appellants' motion for a rehearing.

III. Did the district court abuse its discretion in denying the appellants' motion to sever their trial from the trial of Juan Ramirez?

■ In order to find that the district court abused its· discretion by denying appellants' motion to sever their trial from the trial of Juan Ramirez, this court must find that appellants have demonstrated that the joint trial prejudiced their right to a fair trial. *United States v. Jackson,* 549 F.2d 517, 523–24 (8th Cir. 1977); *United States v. Singer,* 660 F.2d 1295, 1306 (8th Cir.1981). To make a showing of prejudice the appellants must show more than merely that their chances for acquittal would have been better if they had been tried separately from Ramirez. *Id.* They must show that the joint trial resulted in such prejudice that a reasonable jury would not have concluded the way it did.

Both appellants contend that they were prejudiced by being tried jointly with Ramirez because otherwise admissible evidence that Ramirez had 2 ounces of cocaine at his apartment was suppressed in vindication of Ramirez's Fourth Amendment rights. Appellants claim this evidence would have removed suspicion that they were supplying the drugs to Waldron and hence provide grounds for acquittal on the charges of aiding and abetting, conspiracy, and possession with intent to distribute.[9]

■ Our evaluation of appellants' contention requires that we separately examine how this additional evidence would affect the convictions of Elizabeth and Jeffery. As to Elizabeth, we conclude that the additional evidence that Ramirez had 2 ounces of cocaine in his house would not have changed the jury's verdict because of the overwhelming evidence against her. Elizabeth's convictions rested primarily on testimony of Waldron who stated that Elizabeth was her source for two drug sales and that Elizabeth and Ramirez were equal partners in a drug business, on surveillance of Eliza-

---

8. The district court did not make any findings on the record regarding either of these conditions.

9. This evidence affects the possession charge insofar as it negates a finding of intent to distribute.

beth's comings and goings just prior to drug sales, and on the drugs and numerous other items connected with drug dealing found in her house. The fact that Ramirez might have played a larger role in the drug dealings than the evidence at trial suggested does little if anything to negate the very large role of Elizabeth in those dealings.

As to Jeffery, we also conclude that the jury's convictions for possession with intent to distribute and conspiracy to distribute would not have changed. Again, the fact that Ramirez was possibly a source of drugs takes little if anything away from the evidence pointing to Jeffery's involvement in drug trafficking. On November 3, 1981, a surveillance agent observed Jeffery arrive home in an airport cab wearing a brown leather coat and carrying a duffel bag. Within the hour, his wife Elizabeth left the house, stopped briefly at Ramirez's, then went to Waldron's where presumably she delivered 8 ounces of cocaine.

Later the same evening, agents searching the Bulgatz house found drug notations and a cocaine handbook in the duffel bag that Jeffery carried. In the same room where they found the bag they recovered 8 ounces of cocaine and a gram scale. Further, inside of Jeffery's leather coat, the agents found an airline ticket for November 3, from New York City, a center of cocaine traffic, in the false name of R. Smith. Search of the car parked in the attached garage produced $14,000 in cash from the trunk.

We affirm.