[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO SUPPRESS
On Tuesday, June 10, 1997 at 11:40 p. m., the Wethersfield Police Department received a call reporting that there had been an assault in room 218 of the Motel 6 located at 1341 Silas Deane Highway. Upon arrival at the scene, officers discovered Frank Villicana and Gabriel Cordova, both of Tucson, Arizona, severely injured. The inside of room 218 showed signs of struggle as blood was splattered in numerous areas, bloody towels, clothing and bed sheets were present, and two distinct holes apparently made by a knife, appeared present in a pillow that had seemingly been used in a defensive manner.
Investigation revealed that on June 4, 1997, Robert Grass had rented room 218 and the room was still under his name on June 11, 1997. Gabriel Cordova acknowledged to Detective Thomas Dillon in a signed sworn statement that he had been involved with Robert Grass in the trafficking of marijuana. It was later learned that upon his arrival in Connecticut, Cordova turned over to Robert Grass a blue Samsonite suitcase containing ten pounds of marijuana. Cordova further stated that he and Villicana had been CT Page 1080 assaulted in a stabbing incident that occurred when he and Villicana were ambushed by Robert Grass and four other men upon returning to room 218 where they had been in residence since June 4, 1997.
Wethersfield Police were familiar with the activities of Robert Grass and knew that he frequently resided at 405 Middletown Avenue, Wethersfield, Connecticut. It was also known to police that Grass frequently kept his vehicles parked overnight at that location, and that he kept a safe in the rear barn of this property. Phone records and Cordova's admission established that calls had been made to Cordova in Arizona from this residence.
On June 12, 1997, Detective Craig Davis of the Wethersfield Police Department obtained a search and seizure warrant for "405 Middletown Avenue, Wethersfield, Connecticut and its curtilage, including a detached brown colored barn . . . ." The search warrant was executed. No contraband was removed from the house. Eventually the detectives obtained a blue Samsonite suitcase from 405 Middletown Avenue, Wethersfield, Connecticut, but there was no contraband inside.
Prior to entering the house, Detective Davis looked inside a vehicle parked fifteen to twenty feet from the house and saw a blue suitcase inside. At some point after the house was secured, Davis returned to the vehicle outside and opened the vehicle and searched it. The detective indicated that the suitcase was not a Samsonite and there was nothing inside. The detective detected the odor of marijuana and proceeded to open the trunk of the vehicle with a key obtained from defendant, Robert Grass at the time of his arrest for attempted murder and the officer found several pounds of marijuana inside. The detective testified that he did not fear that the automobile would be moved or that the evidence would be destroyed. He did not have Mr. Grass' consent to search.
The matter now before the Court concerns the validity of the search warrant and the actual search of the Lincoln automobile located in the driveway of 405 Middletown Avenue, Wethersfield, Connecticut. Based upon the aforementioned multiple stabbing incident and the information obtained relating to the stabbing and the related marijuana trafficking, the Wethersfield Police obtained, as noted previously, a search warrant for 405 Middletown Avenue, Wethersfield, Connecticut and its curtilage. CT Page 1081 This dispositive issue on this Motion to Suppress is whether the Lincoln located in the driveway of the residence of 405 Middletown Avenue, about fifteen to twenty feet from the home that was to be searched, was lawfully subject to a search under the warrant.
The State avers that the Lincoln automobile located in the driveway of 405 Middletown Avenue, in close proximity to the main residence, is within the curtilage of the home and is therefore subject to a lawful search under the warrant.
The defendant claims, inter alia, that the area described in a search warrant limits the police and does not permit the search of a vehicle that was not specifically designated. The defendant relies on State v. Penna, 4 Conn. Cir. Ct. 421 (1967). That case held:
 "An officer executing a search warrant must strictly comply with the directions contained in the search warrant . . . . The officer must be particular as well to follow the directions of the warrant with respect to the place to be searched.: 47 Am.Jur. 527, Searches and Seizures, § 42. "A search warrant authorizing the search of a dwelling house does not authorize a search of a vehicle parked on the street in front of the house." 79 C.J.S., Searches and Seizures, § 83 (Sup. 1967, p. 126); see 4 Wharton, Criminal Law and Procedure § 1560. The only warrant possessed by the police officers in this case was one which authorized a search of certain named premises and of a certain named person. This did not authorize a search of automobiles. United States v. One 1949 Buick Sedanette, 112 F. Sup. 218; People v. Montgares, 336 Ill. 458, 460; Best v. Commonwealth, 207 Ky. 178, 179; State v. Parsons, 83 N.J. Super. 430, 446.
Inasmuch as the automobile in Penna was parked on the public street and not within the curtilage of the house authorized to be searched, this court concludes that Penna is significantly factually distinguishable from the case at bar and is not controlling.
In determining whether a resident can have a CT Page 1082 reasonable expectation of privacy in a given portion of his or her property, courts may consider, among other relevant factors (1) the proximity to the house of the area claimed to be curtilage, (2) whether the area is included within an enclosure surrounding the house, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by it. United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). When the police, having come onto private property to conduct an investigation, restrict their movements to areas that, under the above analysis, are considered semi-public, observations made from that vantage point are not illegal under the fourth amendment. 1 W. LaFave, Search and Seizure § 2.3 (f), pp. 412-13.
State v. Liptak, 21 Conn. App. 248, 256 (1990). See alsoConnecticut Criminal Caselaw Handbook, Bruckman, Nash Katz, p. 84 (1989). "Curtilage" has also been defined as "an area intimately tied to the home itself, and an area in which domestic activity commonly occurs." State v. Santiago, 224 Conn. 494, 522
(1993).
Where a search warrant application for certain premises had the words "motor vehicle" specifically crossed-out on the application, the court in United States v. Bulgatz, 693 F.2d 728
(8th cir. 1982), nevertheless upheld the search of the motor vehicle. The court in Bulgatz reasoned that "the fact that the affiant had crossed-out the words `motor vehicle' on the search warrant application did not preclude search of an automobile on the premises, but only indicated that the general object of the search was the premises, not the automobile." Id. At 730 n. 3. The court concluded that to rule otherwise and to prohibit the search of the vehicle would be "contrary to settled law." Id., See alsoUnited States v. Napoli, 530 F.2d 1198, 1200-01 (5th Cir. 1976).
In Glenn v. Commonwealth, 390 S.E.2d 505 (Va.App.; 1990), 3.9 pounds of marijuana was found in a car pursuant to a search warrant for which probable cause existed only to search the house. The Glenn court, in wording particularly pertinent to the case at bar, upheld the search of the car by concluding that "a description in a warrant of a dwelling at a certain place is CT Page 1083 taken to include the area within the curtilage of that dwelling, so that it would cover a vehicle parked in the driveway." Glenn,390 S.E.2d at 509 quoting 2w. LaFave Search and Seizure, § 410 © at 322; See also State v. Courtright, 298 S.E.2d 740, 742
(N.C.App. 1983 ("The premises of a dwelling house include, for search and seizure purposes, the area within the curtilage . . . including vehicles located in the curtilage.")
Moreover, in United States v. Gottschalk, 915 F.2d 1459, (10th Cir. 1990) the court approved a search of a vehicle parked in the driveway of a residence where the search warrant authorized only the search of the premises of a residence. The court explained that basis of its holding by emphasizing that "a search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein." Id. This language also makes clear that the search of the vehicle, including the trunk, was permissible in the instant case as the items sought in the search warrant, eg. Blue Samsonite suitcase, butterfly knife, blood-stained clothing, "might be located therein." See Id. Additionally, it was appropriate to search the vehicle and its trunk because a lawful search of premises described in a warrant "extends to the entire area in which the objects of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." United States v. Ross,456 U.S. 798, 820-21 (1982); See also Kearney, 355 SE.2 at 899. See alsoState v. Torres, 31 Conn. App. 443451 (1993).
Similarly, in United States v. Percival, 756 F. 600 (7th Cir. 1985), the court examined the issue of whether a search warrant for a residence and attached garage extended to an automobile and its trunk in which substantial quantities of marijuana were discovered. The court noted that "although a car is less fixed than a closet or a cabinet . . . It is no less fixed than a suitcase or a handbag found on the premises, both of which can be readily searched under Ross." Percival,756 F.2d at 612. Reasoning that "A description of the vehicle is not mandated by the Fourth Amendment," the court affirmed the validity of the search of the automobile, including its trunk, holding that "a search warrant authorizing a search of particularly described premises may permit the search of vehicles . . . on the premises." Id. Therefore, in Percival, as in the instant case, the search of the vehicle and its trunk was legally permissible. CT Page 1084
The court concludes that the warrant authorizing the search of 405 Middletown Avenue "and its curtilage" permitted a search of any vehicles found within the curtilage. While our Supreme and Appellate Courts have often concluded that the Constitution of the State of Connecticut affords our citizens greater protections than the United States Constitution [see, for example, State v.Marsala, 15 Conn. App. 519 (1988)] they "have not yet extended state constitutional protections against unreasonable search and seizures beyond those protections delineated by well settled interpretation of the federal constitution. That is, our state constitution has not been interpreted to afford search and seizure protections not previously recognized under the federal constitution." State v. DeFusco, 27 Conn. App. 248, 257 (1992).
The defendant also claims that there was no probable cause for the issuance of the search warrant. A reading of the affidavit submitted in support of the issuance of the warrant (Exhibit A attached hereto), particularly Paragraphs 3, 5, 6, 7 and 10, provided the issuing judge more than sufficient probable cause to authorize the search of 405 Middletown Avenue, Wethersfield, Connecticut and its curtilage.
This court would rely on the reasoning of our Supreme Court in State v. Couture, 194 Conn. 530 (1984).
 In reviewing the sufficiency of an affidavit for a search warrant we do not conduct a de novo review. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, reh. denied, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). Rather, the traditional standard of review is whether the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. Id. In considering the quantum of certainty required, it is only a probability, and not a prima facie showing of criminal activity, that is the standard of probable cause. United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983). If there is a fair probability that the premises to be searched will yield the objects specified in the search warrant, the fourth amendment has been satisfied even where many localities were available to the guilty parties to secrete the fruits and instrumentalities of the crime. Id. Applying these standards, we agree with the trial court that there CT Page 1085 was a substantial basis for the issuing magistrate to conclude that the weapon used in the murder would be found at the defendant's residence.
Id. At 546.
For all of the foregoing reasons, the defendant's Motion to Suppress is denied.
By the Court
Howard Scheinblum Judge, Superior Court
EXHIBIT A
AFFIDAVIT AND APPLICATION SEARCH AND SEIZURE WARRANT
JD-CR-61 Rev. 6-92 C.G.S. §§ 54-33a, 54-33c, 54-33j
 STATE OF CONNECTICUT SUPERIOR COURT
Form JD-CR-52 must also be completed
INSTRUCTIONS TO APPLICANT
File a copy of the application for the warrant and all affidavitsupon which the warrant is based, in a sealed envelope, with theclerk of the court for the geographical area within which thesearch will be conducted no later than the next business dayfollowing the issuance of the warrant. Indicate the policedepartment, case number and date of issuance on the front of thesealed envelope.
INSTRUCTIONS TO G.A. CLERK
1. Prior to the execution and return of the warrant, do not disclose any information pertaining to the application for the warrant of any affidavits upon which the warrant is based.
2. Upon execution and return of the warrant, affidavits which are the subject of an order dispensing with the requirement of givingCT Page 1086 a copy to the owner, occupant or person within forty-eight hours shall remain in the custody of the clerk's office in a secure location apart from the remainder of the court file.
TO: A Judge of the Superior Court
The undersigned, being duly sworn, complains on oath that the undersigned has probable cause to believe that certain property, to wit:
 A Samsonite suitcase, color blue, any butterfly style knives which may contain traces of blood-like substances, and any clothing which may contain a red bloodlike substance. A motel room key belonging to room 218 or Motel-6. Any safes which may contain the above mentioned items.
 is possessed, controlled, designed or intended for use or which is or has been or may be used as the means of committing the criminal offense of:
 was stolen or embezzled from:
[ ] constitutes evidence of the following offense or that a particular person participated in the commission of the offense of:
Criminal Attempt to Commit Murder 53a-49 (53a-54a)
[ ] is in the possession, custody or control of a journalist or news organization, to wit:
 [ ] and such person or organization has committed or is committing the following offense which is related to such property:
 [ ] and such property constitutes contraband or an instrumentality of the criminal offense of:
And is within or upon a certain person, place or thing, to wit:
 405 Middletown Avenue Wethersfield, Connecticut and it's curtilage, including a detached brown colored barn. The home is two story brown colored duplex located on the west side of Middletown Avenue with the front facing east. The number 405 is affixed to the home. The barn is located CT Page 1087 directly behind the home on the west side.
1. Your affiant, Detective Ronald Johnson, is a duly sworn Police Officer for the Town of Wethersfield, Connecticut and has been for the past twenty six (26) years, presently assigned to the Detective Division. I have investigated numerous violent crimes, including attempted murder and murder, and have process and collected physical evidence from numerous scenes of violent crimes. I have received specialized training in the Investigation of violent crimes, and how to process the scenes of such crimes. I have personal knowledge of the facts and circumstances herein related as a result of my own investigative efforts and those of other police officers who reporting their findings directly to your me.
2. Your affiant, Detective Craig Davis, is a duly sworn Police Officer for the Town of Wethersfield, Connecticut and has been for the past seventeen (17) years, presently assigned to the Detective Division. I have investigated numerous violent crimes, including attempted murder and murder, and have process and collected physical evidence from numerous scenes of violent crimes. I have received specialized training in the investigation of violent crimes, and how to process the scenes of such crimes. I have personal knowledge of the facts and circumstances herein related as a result of my own investigative efforts and those of other police officers who reporting their findings directly to your me.
3. That on Tuesday June 10, 1997 at 11:40 pm, the Wethersfield Police Department received a call reporting that there had been an assault in room 218 of the Motel 6 located at 1341 Silas Deane Highway. Patrol officers responded and found that two people had been stabbed and were injured. Officers discovered Frank Villicana, dob 7-26-64, of Tucson, AZ., bleeding from numerous stab wounds and was severely injured. Officers also discovered Gabriel Cordova, dob 4-19-63, of Tucson, AZ., with lesser injuries consisting of head and leg wounds. Both men were found inside room 218 of the Motel. Both were transported to Hartford Hospital where Cordova was treated and released. Villicana underwent emergency surgery, and was later admitted. Both men claimed they had been attacked by at least four men they knew and had business dealings with.
4. That on Wednesday June 11, 1997, at 12:10 am, detectives arrived at Motel 6. The inside of room 218 of Motel 6 showed CT Page 1088 signs of a struggle, and the room was blood spattered, in numerous areas. Broken beer bottles littered the floor and both beds inside the room. Bloody towels and clothing were also found in and about the room. The bed sheets and bedspread on one bed was blood soaked. A pillow from this bed had two distinct holes that appeared to have been made by a knife, these holes being through the pillowcase and pillow, and it appeared this pillow had been used by someone to defend himself from a knife attack.
5. That on Wednesday June 11, 1997 at 12:15 am, detectives determined that room 218 of Motel 6 had been rented on June 4, 1997 by a person who identified himself as Robert Grass, of 175 Harvard St, in Hartford, CT. Grass identified himself with a photographed Connecticut driver's license, number 094879752. Cordova and Villicana then took up residence in the room and continued up to and including the night of June 10, 1997.
6. That on Wednesday June 11, 1997, about 5:30 am, Detective Mark Miele and Tom Dillon located Robert Grass sitting in Hartford, in a 1989 Buick Regal, color red, bearing CT 147-KSZ. Grass was asked to drive to police headquarters in Wethersfield for an interview, which he freely did. Grass admitted renting room 218 at the Motel 6 on Wednesday, June 4, 1997. Grass said they rented the room with another male only known to him as, John. They used the room to have sex with two female prostitutes whom he did not know. Grass said only stayed a few hours and had checked out, leaving the room key behind in the room. Grass denied assaulting anyone earlier in the night in room 218, or having any knowledge who did. Grass admitted to both detectives that he sold cocaine in the past, but never marijuana. About 6:15 A.M., Grass said he wanted to leave headquarters, and did so.
7. That on Wednesday June 11, 1997, at 3:00 pm, the victim, Gabriel Cordova, gave Detective Thomas Dillon a signed, sworn statement. He stated that he and his family had been involved with Robert Grass in the trafficking of marijuana. Cordova told the detective that he knows other people associated with Robert Grass, and himself, and he identified these other people as being Ricardo Ramirez, Carlos Ramirez, and Steven Joyal. Gabriel Cordova stated that Robert Grass, Rick Ramirez, Carlos Ramirez, Steven Joyal, and a fifth unknown man ambushed him and his friend Francisco Villicana in room 218. Rick Ramirez and Carlos Ramirez assaulted the victims with knives. Robert Grass, Steven Joyal, and the other unknown man assaulted the victims with their fists and their feet. Both victims were cut, bruised, and Villicana CT Page 1089 received serious puncture wounds about the face and chest. Villicana was also cut across the left eye and may loose the sight in this eye. Ricardo and Carlos Ramirez threatened the victims and their families in Arizona with death. Gabriel also said, he and Villicana were walking back to their room when Cordova noticed Grass' vehicle, a Buick Regal, enter the motel lot. When Gabriel opened his room door (218), Grass and the others were already inside. According to Cordova, someone must of had a room key, because the room door was locked. There were no signs of forced entry. It is possible that Robert Grass, or one of the other assailants stills possess the room key, to room 218.
The undersigned has not presented this application in any other court or to any other judge.
This application consists of this form plus ______ pages attached hereto and made a part hereof.
Wherefore the undersigned requests that s warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property.
STATE OF CONNECTICUT =========================================================================== CITY/TOWN | DATE | SIGNATURE AND TITLE OF AFFIANT ___________________|________________|______________________________________ HARTFORD | 6-12-97 | ___________________|________________|______________________________________ HARTFORD | 6-12-97 | ___________________|________________|______________________________________ JURAT | Subscribed | DATE | SIGNED (Judge of the Superior Court) | and sworn | | | to before | June 12, 1997 | | me on: | | ===========================================================================
8. For many years, this police department has received continuous intelligence information regarding the illegal drug activity involving Robert Grass, DOB 9/7/69, who has lived in many locations throughout the Town of Wethersfield. One specific location being 405 Middletown Avenue where Grass frequently resides. On an almost nightly basis, Grass' personal vehicles is parked overnight in the driveway to 405 Middletown Avenue. Additional information from a previous resident of 405 Middletown Avenue, whom can be identified, but will remain anonymous at this CT Page 1090 time, was that Grass kept a safe in the rear barn. The contents of the safe where not known by the former resident.
9. According to State of Connecticut Motor Vehicle files, Robert Grass does have a 1989 Buick Regal, color red, bearing CT 147-KSZ, Vin# 2G4WB14W5K1404181, which corroborates Cordova's vehicle description of what Grass was driving just prior to the assault.
10. In a search warrant for toll records of the Southern New England Telephone Company in New Haven, Connecticut, dated February 7, 1997, for 405 Middletown Avenue, it revealed many toll calls had been made from that address for the previous six months. One particular phone number that was called from Grass' house was (520) 573-3521, which is listed to a person with the last name of Codrova in Tucson, AZ. Calls were made to Arizona on Jan 1, 1997, at 1:19 P.M., and February 2, 1997, at 11:04 P.M.
11. Through investigation, one of the victim's in this attempted murder case, Gabriel Codova, provided police with his home phone number in Arizona, being (520) 573-3521.
12. On Thursday, June 6, 1997, affiant Johnson obtained arrest warrants for Robert Grass, Ricardo Ramirez, Carlos Ramirez, and Steven Joyal for numerous charges, including attempted Murder.
The undersigned has not presented this application in any other court or to any other judge.
This application consists of this form plus ____ pages attached hereto and made a part hereof.
Wherefore the undersigned requests that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property.
STATE OF CONNECTICUT =========================================================================== CITY/TOWN | DATE | SIGNATURE AND TITLE OF AFFIANT ___________________|________________|______________________________________ HARTFORD | 6-12-97 | ___________________|________________|______________________________________ HARTFORD | 6-12-97 | ___________________|________________|______________________________________ JURAT | Subscribed | DATE | SIGNED (Judge of the Superior Court) | and sworn | | CT Page 1091 | to before | June 12, 1997 | | me on: | | ===========================================================================
13. Based on your affiants personal training and experience in attempted murder cases, or murder cases, it is common for assailants to conceal, store, or possess evidence and/or weapons used to commit the crime in their home, safes or vehicles.
14. Based on the preceding thirteen (13) paragraphs, your affiants have probable cause to believe that evidence of the crime of attempted murder, will be located inside 405 Middletown Avenue Wethersfield, Connecticut and/or the curtilage.
The undersigned has not presented this application in any other court or to any other judge.
This application consists of this form plus pages attached hereto and made a part hereof.
Wherefore the undersigned requests that a warrant may issue commanding a proper officer to search said person or to enter into or upon said place or thing, search the same, and take into custody all such property.
STATE OF CONNECTICUT =========================================================================== CITY/TOWN | DATE | SIGNATURE AND TITLE OF AFFIANT ___________________|________________|______________________________________ HARTFORD | 6-12-97 | ___________________|________________|______________________________________ HARTFORD | 6-12-97 | ___________________|________________|______________________________________ JURAT | Subscribed | DATE | SIGNED (Judge of the Superior Court) | and sworn | | | to before | June 12, 1997 | | me on: | | ===========================================================================
 REQUIREMENT OF DELIVERY pursuant to 54-33c, Connecticut General Statutes
TO: A Judge of the Superior Court
For the reasons set forth below, the undersigned, being duly CT Page 1092 sworn, requests that the judge dispense with the requirement of C.G.S. § 54-33c that a copy of the affidavit(s) in support of the warrant be given to the owner, occupant or person named therein within forty eight hours:
[] The personal safety of a confidential informant would be jeopardized by the giving of a copy of the affidavits at such time;
[] The search is part of a continuing investigation which would be adversely affected by the giving of a copy of the affidavits at such time;
[ ] The giving of such affidavits at such time would require disclosure of information or material prohibited from being disclosed by chapter 959a of the general statutes;
and the specific details with regard to such reasons are as follows:
 The release of any information in this ongoing attempted murder case will jeopardize the safety of the police officers in this case.
The undersigned further requests that this affidavit also be included in such nondelivery.
STATE OF CONNECTICUT =========================================================================== CITY/TOWN | DATE | SIGNATURE AND TITLE OF AFFIANT ___________________|________________|______________________________________ HARTFORD | 6-12-97 | ___________________|________________|______________________________________ HARTFORD | 6-12-97 | ___________________|________________|______________________________________ JURAT | Subscribed | DATE | SIGNED (Judge of the Superior Court) | and sworn | | | to before | June 12, 1997 | | me on: | | ===========================================================================
 STATE OF CONNECTICUT SUPERIOR COURT
The foregoing Affidavit and Application for Search and Seizure Warrant having been presented to and been considered by the CT Page 1093 undersigned, a Judge of the Superior Court, the undersigned (a) is satisfied therefrom that grounds exist for said application and (b) finds that said affidavit establishes grounds and probable cause for the undersigned to issue this Search and Seizure Warrant, such probable cause being the following: From said affidavit, the undersigned finds that there is probable cause for the undersigned to believe that the property described in the foregoing affidavit and application is within or upon the person if any, named or described in the foregoing affidavit and application, or the place or thing, if any, described in the foregoing affidavit and application, under the conditions and circumstances set forth in the foregoing affidavit and application, and that, therefore a Search and Seizure Warrant should issue for said property.
 NOW THEREFORE, by Authority of the State of Connecticut, I hereby command any Police Officer of a regularly organized police department, any State Policeman; or any conservation officer, special conservation officer or patrolman acting pursuant to C.G.S. § 26-6 to whom these presents shall come within ten days after the date of this warrant to
[] enter into or upon and search the place or thing described in the foregoing affidavit and application, to wit:
 405 Middletown Avenue Wethersfield, Connecticut and its curtilage, including a detach brown colored barn. The home is two story brown colored duplex located on the west side of Middletown Avenue with the front facing east. The number 405 is affixed to the home. The barn is located directly behind the home on the west side.
[ ] search the person described in the foregoing affidavit and application, to wit:
for the property described in the foregoing affidavit and application, to wit:
 A Samsonite suitcase, color blue, any butterfly style knives which may contain traces of blood-like substances, and any clothing which may contain a red blood-like substance. A motel room key belonging to room 218 or Motel-6. Any safes which may contain the above mentioned items. CT Page 1094
and upon finding said property to seize the same, take and keep it in custody until the further order of the court, and with reason able promptness make due return of this warrant accompanied by a written inventory of all property seized.
[] The foregoing request that the judge dispense with the requirement of C.G.S. § 54-33c that a copy of the affidavit(s) in support of the warrant be given to the owner, occupant or person named therein and that the affidavit in support of such request also be included in such nondelivery is hereby: ______________________________ | NOT TO EXCEED 2 WEEKS BEYOND | | DATE WARRANT IS EXECUTED | | 14 days | [] GRANTED for a period of |______________________________| This order, or any extension thereof, dispensing with said requirement shall not limit disclosure of such affidavits to the attorney for a person arrested in connection with or subsequent to the execution of the search warrant unless, upon motion of the prosecuting authority within two weeks of such arraignment the court finds that the state's interest in continuing nondisclosure substantially outweighs the defendant's right to disclosure.
[ ] DENIED ___________________________________________________________________________ | DATE | SIGNED (Judge of Signed at HARTFORD, Connecticut, on: | June 12, 1997 | Superior Court) ===========================================================================
97-914-SW =========================================================================== JUDICIAL DISTRICT OF | AT (Address of Court) | DATE OF SEIZURE New, Britain | 125 Columbus Blvd., | June 12, 1997 | New Britain, CT | _____________________|______________________________|_______________________ DOCKET NO. | UNIFORM ARREST | POLICE CASE | COMPANION CASE NO. | NO. | NO. | CR-97-169609 | | 97-06-0791 | _____________________|________________|_____________|_______________________
Then and there by virtue of and pursuant to the authority of the foregoing warrant, I searched the person, place, or thing named therein, to wit: CT Page 1095
 405 Middletown Avenue, Wethersfield, Connecticut and it's curtilage, including a detached brown colored barn. The home is a two story brown colored duplex located on the west side of Middletown Avenue with the front facing east. The number 405 is affixed to the home. The barn is located directly behind the home on the west side.
[ ] Total Cash Seized: ________ consisting of
 One blue Samsonite suitcase One large white plastic bag containing ten small plastic wraps One Sentry, model 1250 safe
and I gave a copy of such warrant to Robert M. Grass, the owner or occupant of the dwelling, structure, motor vehicle or place designated therein, or to ____________________ the person named therein, on (Date): June 12, 1997.
___________________________________________________________________________ DATE OF THIS RETURN | SIGNED (Officer's Signature and department) June 12, 1997 | Wethersfield, P.D. ===========================================================================
NOTE: Form JD-CR-61, pages 1-6 must be supplemented by Form JD-CR-52.