[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO SUPPRESS
On Tuesday, June 10, 1997 at 11:40 p. m., the Wethersfield Police Department received a call reporting that there had been an assault in room 218 of the Motel 6 located at 1341 Silas Deane CT Page 32 Highway. Upon arrival at the scene, officers discovered Frank Villicana and Gabriel Cordova, both of Tucson, Arizona, severely injured. The inside of room 218 showed signs of struggle as blood was splattered in numerous areas, bloody towels, clothing and bed sheets were present, and two distinct holes apparently made by a knife, appeared present in a pillow that had seemingly been used in a defensive manner.
Investigation revealed that on June 4, 1997, Robert Grass had rented room 218 and the room was still under his name on June 11, 1997. Gabriel Cordova acknowledged to Detective Thomas Dillon in a signed-sworn statement that he had been involved with Robert Grass in the trafficking of marijuana. It was later learned that upon his arrival in Connecticut, Cordova turned over to Robert Grass a blue Samsonite suitcase containing ten pounds of marijuana. Cordova further stated that he and Villicana had been assaulted in a stabbing incident that occurred when he and Villicana were ambushed by Robert Grass and four other men upon returning to room 218 where they had been in residence since June 4, 1997.
Wethersfield Police were familiar with the activities of Robert Grass and knew that he frequently resided at 405 Middletown Avenue, Wethersfield, Connecticut. It was also known to police that Grass frequently kept his vehicles parked overnight at that location, and that he kept a safe in the rear barn of this property. Phone records and Cordova's admission established that calls had been made to Cordova in Arizona from this residence.
On June 12, 1997, Detective Craig Davis of the Wethersfield Police Department obtained a search and seizure warrant for "405 Middletown Avenue, Wethersfield, Connecticut and its curtilage, including a detached brown colored barn. . . ." The search warrant was executed. No contraband was removed from the house. Eventually the detectives obtained a blue Samsonite suitcase from 405 Middletown Avenue, Wethersfield, Connecticut, but there was no contraband inside.
Prior to entering the house, Detective Davis looked inside a vehicle parked fifteen to twenty feet from the house and saw a blue suitcase inside. At some point after the house was secured, Davis returned to the vehicle outside and opened the vehicle and searched it. The detective indicated that the suitcase was not a Samsonite and there was nothing inside. The detective detected CT Page 33 the odor of marijuana and proceeded to open the trunk of the vehicle with a key obtained from defendant, Robert Grass at the time of his arrest for attempted murder and the officer found several pounds of marijuana inside. The detective testified that he did not fear that the automobile would be moved or that the evidence would be destroyed. He did not have Mr. Grass' consent to search.
The matter now before the Court concerns the validity of the search warrant and the actual search of the Lincoln automobile located in the driveway of 405 Middletown Avenue, Wethersfield, Connecticut. Based upon the aforementioned multiple stabbing incident and the information obtained relating to the stabbing and the related marijuana trafficking, the Wethersfield Police obtained, as noted previously, a search warrant for 405 Middletown Avenue, Wethersfield, Connecticut and its curtilage. This dispositive issue on this Motion to Suppress is whether the Lincoln located in the driveway of the residence of 405 Middletown Avenue, about fifteen to twenty feet from the home that was to be searched, was lawfully subject to a search under the warrant.
The State avers that the Lincoln automobile located in the driveway of 405 Middletown Avenue, in close proximity to the main residence, is within the curtilage of the home and is therefore subject to a lawful search under the warrant.
The defendant claims, inter alia, that the area described in a search warrant limits the police and does not permit the search of a vehicle that was not specifically designated. The defendant relies on State v. Penna, 4 Conn. Cir. Ct. 421 (1967). That case held:
 "An officer executing a search warrant must strictly comply with the directions contained in the search warrant. . . . The officer must be particular as well to follow the directions of the warrant with respect to the place to be searched.: 47 Am.Jur. 527, Searches and Seizures, § 42. "A search warrant authorizing the search of a dwelling house does not authorize a search of a vehicle parked on the street in front of the house." 79 C.J.S., Searches and Seizures, § 83 (Sup. 1967, p. 126); see 4 Wharton, Criminal Law and Procedure § 1560. The only warrant possessed by the police officers in this case was one which authorized a search of certain named premises and of a certain named person. This CT Page 34 did not authorize a search of automobiles. United States v. One 1949 Buick Sedanette, 112 F. Sup. 218; People v. Montgares, 336 Ill. 458, 460; Best v. Commonwealth, 207 Ky, 178, 179; State v. Parsons, 83 N.J. Super. 430, 446.
Inasmuch as the automobile in Penna was parked on the public street and not within the curtilage of the house authorized to be searched, this court concludes that Penna is significantly factually distinguishable from the case at bar and is not controlling.
 In determining whether a resident can have a reasonable expectation of privacy in a given portion of his or her property, courts may consider, among other relevant factors (1) the proximity to the house of the area claimed to be curtilage, (2) whether the area is included within an enclosure surrounding the house, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by it. United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). When the police, having come onto private property to conduct an investigation, restrict their movements to areas that, under the above analysis, are considered semi-public, observations made from that vantage point are not illegal under the fourth amendment. 1 W. LaFave, Search and Seizure § 2.3 (f), pp. 412-13.
State v. Liptak, 21 Conn. App. 248, 256 (1990). See alsoConnecticut Criminal Caselaw Handbook, Bruckman, Nash Katz, p. 84 (1989). "Curtilage" has also been defined as "an area intimately tied to the home itself, and an area in which domestic activity commonly occurs."State v. Santiago, 224 Conn. 494, 522 (1993).
Where a search warrant application for certain premises had the words "motor vehicle" specifically crossed-out on the application, the court in United States v. Bulgatz, 693 F.2d 728
(8th cir. 1982), nevertheless upheld the search of the motor vehicle. The court in Bulgatz reasoned that "the fact that the affiant had crossed-out the words `motor vehicle' on the search warrant application did not preclude search of an automobile on the premises, but only indicated that the general object of the search was the premises, not the automobile." Id. At 730 n. 3. The court concluded that to rule otherwise and to prohibit the search of the vehicle would be "contrary to settled law." Id., See alsoUnited States v. Napoli, 530 F.2d 1198, 1200-01 (5th Cir. 1976). CT Page 35
In Glenn v. Commonwealth, 390 S.E.2d 505 (Va.App.; 1990), 3.9 pounds of marijuana was found in a car pursuant to a search warrant for which probable cause existed only to search the house. The Glenn court, in wording particularly pertinent to the case at bar, upheld the search of the car by concluding that "a description in a warrant of a dwelling at a certain place is taken to include the area within the curtilage of that dwelling, so that it would cover a vehicle parked in the driveway." Glenn,390 S.E.2d at 509 quoting 2w. LaFave Search and Seizure, § 410) at 322; See also State v. Courtright, 298 S.E.2d 740, 742
(N.C.App. 1983 ("The premises of a dwelling house include, for search and seizure purposes, the area within the curtilage. . . including vehicles located in the curtilage.")
Moreover, in United States v. Gottschalk, 915 F.2d 1459, (10th Cir. 1990) the court approved a search of a vehicle parked in the driveway of a residence where the search warrant authorized only the search of the premises of a residence. The court explained that basis of its holding by emphasizing that "a search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein." Id. This language also makes clear that the search of the vehicle, including the trunk, was permissible in the instant case as the items sought in the search warrant, eg. Blue Samsonite suitcase, butterfly knife, blood-stained clothing, "might be located therein." See Id. Additionally, it was appropriate to search the vehicle and its trunk because a lawful search of premises described in a warrant "extends to the entire area in which the objects of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." United States v. Ross,456 U.S. 798, 820-21 (1982); See also Kearney, 355 SE.2 at 899. See alsoState v. Torres, 31 Conn. App. 44351 (1993).
Similarly, in United States v. Percival, 756 F. 600 (7th Cir. 1985), the court examined the issue of whether a search warrant for a residence and attached garage extended to an automobile and its trunk in which substantial quantities of marijuana were discovered. The court noted that "although a car is less fixed than a closet or a cabinet. . . It is no less fixed than a suitcase or a handbag found on the premises, both of which can be readily searched under Ross." Percival, 756 F.2d at 612. Reasoning that "A description of the vehicle is not mandated by the Fourth Amendment," the court affirmed the validity of the CT Page 36 search of the automobile, including its trunk, holding that "a search warrant authorizing a search of particularly described premises may permit the search of vehicles . . . on the premises." Id. Therefore, in Percival, as in the instant case, the search of the vehicle and its trunk was legally permissible.
The court concludes that the warrant authorizing the search of 405 Middletown Avenue "and its curtilage" permitted a search of any vehicles found within the curtilage. While our Supreme and Appellate Courts have often concluded that the Constitution of the State of Connecticut affords our citizens greater protections than the United States Constitution [see, for example, State v.Marsala, 15 Conn. App. 519 (1988)] they "have not yet extended state constitutional protections against unreasonable search and seizures beyond those protections delineated by well settled interpretation of the federal constitution. That is, our state constitution has not been interpreted to afford search and seizure protections not previously recognized under the federal constitution." State v. DeFusco, 27 Conn. App. 248, 257 (1992).
The defendant also claims that there was no probable cause for the issuance of the search warrant. A reading of the affidavit submitted in support of the issuance of the warrant (Exhibit A attached hereto), particularly Paragraphs 3, 5, 6, 7 and 10, provided the issuing judge more than sufficient probable cause to authorize the search of 405 Middletown Avenue, Wethersfield, Connecticut and its curtilage.
This court would rely on the reasoning of our Supreme Court in State v. Couture, 194 Conn. 530 (1984).
 In reviewing the sufficiency of an affidavit for a search warrant we do not conduct a de novo review. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, reh. denied, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). Rather, the traditional standard of review is whether the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. Id. In considering the quantum of certainty required, it is only a probability, and not a prima facie showing of criminal activity, that is the standard of probable cause. United States v. Travisano, 724 F.2d 341, 346 (2d Cir. 1983). If there is a fair probability that the premises to be searched will yield the objects specified in the search warrant, the fourth amendment has been satisfied even where many localities were available to the guilty parties to secrete the fruits and instrumentalities of the crime. CT Page 37 Id. Applying these standards, we agree with the trial court that there was a substantial basis for the issuing magistrate to conclude that the weapon used in the murder would be found at the defendant's residence.
Id. At 546.
For all of the foregoing reasons, the defendant's Motion to Suppress is denied.
By the Court
HOWARD SCHEINBLUM JUDGE, SUPERIOR COURT